*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0194p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

JANICE GECEWICZ,

        *Plaintiff-Appellant,*

     *v.*

HENRY FORD MACOMB HOSPITAL
CORPORATION,

        *Defendant-Appellee.*

No. 11-1065

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:09-cv-14013—David M. Lawson, District Judge.

Decided and Filed: June 22, 2012

Before: BOGGS, SUHRHEINRICH, and COOK, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Eric I. Frankie, THE RASOR LAW FIRM, Royal Oak, Michigan, for
Appellant. Linda G. Burwell, Kathleen M. Gatti, NEMETH BURWELL, P.C., Detroit,
Michigan, for Appellee.

_____

**OPINION**

_____

BOGGS, Circuit Judge. Janice Gecewicz appeals the district court's grant of
summary judgment to her former employer in this employment-discrimination case. We
affirm.

I

A

Henry Ford Macomb Hospital has a policy meant to penalize excessive unscheduled absences from work.  An absence that was not scheduled in advance with the employee's supervisor was noted on the employee's employment record as an "occurrence" and remained on the employee's record for one year.  A failure to appear for a work shift was labeled a "no show," and was counted as *three* occurrences.  If an employee accrued seven occurrences within a twelve-month period, the employee would receive a written warning.  If an employee accrued nine occurrences in a twelve-month period, the employee could be fired.

Though Henry Ford discouraged unexcused absences, the hospital also allowed employees to take several types of scheduled absences.  Employees could take time off for vacation, illness, or personal reasons (together, "Earned Time Off"), as long as the absences were scheduled in advance with the employee's supervisor.  A full-time employee accrued 30 days of Earned Time Off (ETO) per year.

Additionally,  employees were eligible, upon request, for unpaid time off for medical reasons under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*   The FMLA allows eligible employees who are unable to perform their duties "[b]ecause of a serious health condition" up to "12 workweeks of leave during any 12-month period."  29 U.S.C. § 2612.

In order to schedule time off, employees filled out a time-off form and gave it to their supervisors.  If the time off was approved, the supervisor would sign the form and post it in a designated common area.

Janice Gecewicz began working for the hospital in 1998.  She was fired in 2008.  At the time she was fired, she worked as a Sterile Processing Technician,  sterilizing instruments and delivering surgical trays and carts.  She worked under the supervision of Carol Rogers.

Gecewicz took both ETO leave and FMLA leave during her employment with Henry Ford. Many of Gecewicz's absences were due to a number of surgical procedures. In 1998, Gecewicz had a hysterectomy, a Burch procedure to correct a bladder tilt, and a tibial osteotomy. Later, she had knee surgery on both knees. In 2004 she had gastric-bypass surgery. In 2007, she had carpal-tunnel surgery and bowel-obstruction surgery. She received permission for these surgery-related absences from Rogers, her supervisor. She was never disciplined for any of these absences.

Over the years of her employment, Rogers, Gecewicz's supervisor, commented to her several times about her surgeries. In 2002, Gecewicz claims that Rogers told her at a performance evaluation: "You've had a lot of surgeries for one person." In 2003, when Gecewicz told Rogers she planned to have the gastric-bypass surgery, she claims that Rogers told her: "That's a very risky procedure." Gecewicz maintains that these comments show that Rogers regarded her as disabled.

In 2007, Gecewicz accrued a number of unscheduled absences from work. On February 26, 2008, she received a written warning that she had accrued seven occurrences.

On April 10, 2008, Gecewicz had another unscheduled absence, again pushing her up to seven occurrences (one "occurrence" had "fallen off" her record since her last written warning). She received a written warning in May 2008 that she had seven "occurrences" and was eligible for termination at nine.

According to Rogers, Gecewicz failed to show up for work on May 22, 2008. Gecewicz's shift was to begin at 10:00 pm. Rogers testified that Gecewicz called in at 10:00 pm to say that she would be an hour late; however, Gecewicz never showed up for work. Rogers listed this as a "No Call/No Show," which counted as three occurrences. Gecewicz now had ten occurrences on her record, making her eligible for termination.

Gecewicz disputes Rogers's recollection of her May 22, 2008 absence. Gecewicz argued before the district court that she had requested the 22nd off, had received approval from Rogers, and that she should not have received an "occurrence"

for her absence on that day. Gecewicz argued that she had received the signed form allowing her to take the 22nd off and put it in her locker. However, she could not produce the form—she could only speculate that it had been taken by Rogers after Gecewicz was fired. The district court credited Gecewicz's argument that her absence on May 22 was excused as true for the purposes of its summary-judgment analysis.

After Gecewicz's absence on the 22nd, Rogers contacted A.J. Evans, a human-resources officer with the hospital, to inform her that Gecewicz was over the nine-occurrence limit. Evans and Rogers decided to fire Gecewicz, and scheduled a meeting with her on June 20, 2008 for this purpose.[1]

At the meeting, Rogers and Evans told Gecewicz that she had ten occurrences. Gecewicz did not argue or contradict this assertion. Rogers and Evans informed her that she was being fired. After the meeting, Gecewicz was not allowed to empty her locker to collect her possessions before she had to leave the hospital. A month later, Rogers emptied the locker and sent the contents to Evans, who mailed them to Gecewicz. The time-off form for May 22 (which Gecewicz argued should have been in the locker) was not mailed to her.

B

In March 2009, Gecewicz filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), in which she alleged that her termination violated the Americans With Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101–12300. She testified that she believed that Rogers believed she was disabled and this was the reason that her employment was terminated. She based her belief on comments Rogers had made to her that Rogers thought she had "too many surgeries."

---

[1] Another factual dispute arose regarding the days preceding this meeting. Henry Ford alleged that Gecewicz accrued occurrences on June 9 and June 10, 2008. However, Gecewicz argued that her last day of work, pending the June 20 meeting with Evans and Rogers, was June 6. The district court credited Gecewicz's version of the facts, and thus disregarded these possible accrued absences when deciding the summary-judgment motion.

On October 9, 2009, Gecewicz filed a complaint against the hospital, alleging a claim under the ADA.**²** Gecewicz alleged that she was disabled within the meaning of the ADA, that she was discriminated against by the hospital on the basis of her disability, that she was replaced by a non-disabled person, and that she had suffered damages as a result.

In October 2010, Henry Ford moved for summary judgment. In its motion, Henry Ford argued that Gecewicz failed to make out a prima facie case of discrimination under the ADA, that could not show that she was "regarded as" having a disability, and that the hospital had articulated a legitimate, nondiscriminatory reason for her termination. The hospital argued that the sole reason for Gecewicz's termination was her excessive number of unscheduled absences.

Gecewicz responded to the hospital's motion by arguing that questions of material fact remained concerning her "regarded-as-disabled" claim under the ADA. She argued that Rogers admitted that she was aware of a number of Gecewicz's surgeries—the knee replacement, bariatric surgery, carpal-tunnel surgery, and bowel-obstruction surgery. She stated that Rogers made "repeated statements" to her about her surgeries, including "how those surgeries affected her ability to work." Gecewicz noted that, around the time of her gastric-bypass surgery, Rogers told her, "You've had a lot of surgeries for one person." Thus, she argued, Rogers "expressed her hostility towards Plaintiff's perceived medical conditions." She stated: "Clearly, Rogers was fearful that Plaintiff would not be able to perform her job because of absences related to her medical condition." Gecewicz argued that Rogers mislabeled her absence of May 22 as a "No Call/No Show" in order to terminate Gecewicz, because Rogers perceived Gecewicz as disabled. Gecewicz additionally alleged that Rogers had in fact already approved the absence, and that the form was in Gecewicz's locker and had not been sent to her, in an effort to make it appear that a scheduled absence was really a no-show. Gecewicz

---

**²**Gecewicz alleged other claims, as well, but she withdrew all of these by the summary-judgment stage of litigation.

argued that the hospital's articulated reason for her termination—that she violated the hospital's attendance policy—was merely a pretext for discrimination.

The district court granted summary judgment in favor of the hospital. The district court was careful to construe all facts in favor of Gecewicz and to make all inferences in her favor. In fact, the court assumed that Gecewicz was correct that her contested absence of May 22 was scheduled, that Rogers had signed and posted the time-off form for the 22nd, that it had been in Gecewicz's locker, and that it was not returned to Gecewicz with the rest of her possessions. The court also assumed that Gecewicz was correct that her last day of work was June 6, 2008, so that her absences on June 9 and June 10 did not count as occurrences. The court therefore assumed that Gecewicz had fewer than nine occurrences when she was fired, and that Gecewicz had shown that the hospital's proffered reason for firing her was pretextual.

Despite drawing all inferences in her favor, however, the district court determined that Gecewicz failed to offer evidence that she was "regarded as having . . . [an] impairment that substantially limits her major life activity of working in a broad class of jobs. *Milholland v. Sumner Cnty. Bd. of Educ.*, 569 F.3d 562, 567 (6th Cir. 2009) (internal quotations and citations omitted). The court noted that proving that the hospital fabricated a pretextual reason for firing her was not equivalent to proving that the hospital or her supervisor regarded her as disabled. The court further noted that the only evidence that Gecewicz put forth that Rogers regarded her as disabled were two statements—"You've had a lot of surgeries for one person," and "[Gastric bypass] is a very risky surgery"—that she made to Gecewicz in 2002 and 2003. The court determined that these statements (made five to six years before the firing) were isolated statements made in the past that gave no indication that Rogers regarded Gecewicz as having an *ongoing* disability, "that the transient conditions that required surgeries in the past might recur, or that [Gecewicz] might encounter a new ailment that might require her to take time off." The court noted that, other than criticism for attendance problems, Gecewicz's performance evaluations were good, giving no indication that she was regarded as having a condition that interfered with her work.

Finally, the court stated that "Rogers's remarks, fairly read, do not translate into a concern over the plaintiff's ability to work, but rather her ability to come to work." The court noted that the Sixth Circuit has held that an employee is not considered qualified under the ADA if she is unable to meet the requirements for attendance. *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 419 (6th Cir. 2004); *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998).

Based on the facts that Rogers's remarks were made years before Gecewicz was terminated, that they did not indicate that Rogers believed Gecewicz had a disability that was ongoing or recurrent, and that they indicated that Rogers was concerned about Gecewicz coming to work rather than being capable to do her work when she was there, the district court concluded that Gecewicz had failed to offer evidence that created a genuine issue of material fact as to whether the defendant regarded her as disabled. It therefore granted summary judgment in Henry Ford's favor.

Gecewicz filed this timely appeal.

II

We review the district court's grant of summary judgment *de novo*, using the same standard of review applicable in the district court. *Gantt*, 143 F.3d at 1045. Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In analyzing a motion for summary judgment, we construe all evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

As she put forth no direct evidence of discrimination, Gecewicz had the burden to prove a prima-facie case based on circumstantial evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981). To establish her prima-facie case, Gecewicz had to show five things: she was disabled; she was otherwise qualified to perform the essential functions of her job; she suffered an adverse employment action; her employer knew or had reason

to know of her disability; and either the position remained open or a non-disabled person replaced her.  *Brenneman*, 366 F.3d at 417.

The ADA provides three avenues for a plaintiff to follow to prove that she is disabled under the Act. The term "disability" means:

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1); *see also Moorer v. Baptist Mem'l Health Care Sys.*, 398 F.3d 469, 479 (6th Cir. 2005).  Gecewicz argued that her case fell under subsection (1)(C)—that she was "regarded as" disabled.  Section 12102(3) provides:

(3) Regarded as having such an impairment

For purposes of paragraph (1)(C):

(A) An individual meets the requirement of "being regarded as having such an impairment"if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

(B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor.  A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

42 U.S.C. § 12102(3).  Therefore, to prove that she was "regarded as" disabled, Gecewicz had to show that Henry Ford "regarded her as having a physical or mental impairment that substantially limit[ed] one or more of her major life activities" and that the impairment was one with a duration of more than six months. *Watts v. United Parcel Serv.*, 378 F. App'x 520, 525 (6th Cir. 2010); *accord Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 567 (6th Cir. 2009).

The district court determined that Gecewicz failed to establish that she was "regarded as" disabled.  We agree with its assessment.  The two statements that Rogers

made to Gecewicz about her surgeries were isolated and made years before Gecewicz was fired—they gave no indication that Rogers regarded Gecewicz as having an *ongoing* disability or, as the district court stated, "that the transient conditions that required surgeries in the past might recur, or that [Gecewicz] might encounter a new ailment that might require her to take time off."

On appeal, Gecewicz argues that the district court disregarded "numerous" pieces of evidence in support of her "regarded as" claim. She also argues that the district court should have considered the "fact" that Rogers "mislabel[ed Gecewicz's] absence on May 22" as additional evidence that Rogers regarded her as disabled. She argues that Rogers, "presumably based on her fears about Plaintiff's surgeries, disregarded her own approval of Plaintiff's [time off] for May 22, 2008." These arguments are dealt with in turn.

Gecewicz only provides one additional statement that she claims the district court failed to consider when it analyzed her "regarded as" disabled claim. Gecewicz pointed to a statement that she made in her deposition, where she recalled Rogers having told her, around 2007: "[I]f I didn't have so many surgeries I wouldn't have so much time off and [that] I need to take better care of myself." Counting this statement, the total number of statements that Gecewicz alleged Rogers made about her surgeries was three: (1) Rogers's statement in 2002: "You've had a lot of surgeries for one person"; (2) Rogers's 2003 statement, in response to Gecewicz's plan to have gastric-bypass surgery: "That's a very risky procedure"; and (3) Gecewicz's recollection that Rogers told her, around 2007: "if I didn't have so many surgeries I wouldn't have so much time off and [that] I need to take better care of myself." Gecewicz characterizes this evidence as showing that Rogers made "repeated statements . . . about her surgeries" and "statements of concern . . . about her surgeries."

Gecewicz's argument is meritless. First, none of Rogers's statements shows that she believed Gecewicz had a physical or mental impairment of a duration longer than six months. Second, as the district court pointed out, the concern reflected in each of Rogers's statements—including the third statement, which Gecewicz emphasizes on

appeal—centers on Gecewicz's excessive absenteeism, not a perceived disability.  Being absent from work is not a disability.  *See Nasser v. City of Columbus*, 92 F. App'x 261, 263 (6th Cir. 2004).  In fact, absenteeism may prevent a plaintiff from proving that she was "qualified" for protection under the ADA.  *Gantt*, 143 F.3d at 1047 ("An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA.") (quoting *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 213 (4th Cir. 1994)) (internal quotation marks omitted); *see also Brenneman*, 366 F.3d at 419 (holding that plaintiff's excessive absenteeism rendered him unqualified for his job as a matter of law).  For that reason, the additional statement that Gecewicz notes on appeal provides no additional evidence that Rogers regarded her as disabled.

Moreover, Gecewicz's second argument, that the district court should have considered her disputed May 22 "no show" as evidence that Rogers regarded her as disabled, is meritless.  Her assertion that she formally requested May 22, 2008, off is unsupported by the record; in fact, it was contradicted by her own deposition testimony. *See* Gecewicz Deposition at 211 (Counsel asked Gecewicz: "Are you contending that you requested the 22nd off though?"  Gecewicz then replied: "I don't recall.  I don't believe I asked for the 22nd of May off.  It is not on the schedule nor [sic] the calendar page that you have given me.").  Though the district court, from an abundance of caution, assumed that Gecewicz's version of the facts is correct, her additional contentions—that Rogers approved the time off, posted the corresponding form, Gecewicz put the form in her locker, and then Rogers lost or confiscated the form—are purely speculative.  The additional unsupported inference, that Rogers did all of this because she feared Gecewicz's disability, is well beyond a "reasonable inference." Though we must draw all reasonable inferences in favor of Gecewicz, the nonmoving party, we need not make assumptions that strain credulity.  *Visser v. Packer Eng'g Assocs.*, 924 F.2d 655, 659 (7th Cir. 1991) (holding that "inferences and opinions . . . must not be flights of fancy, speculation, hunches, intuitions, or rumors . . . .").

III

For the foregoing reasons, the district court's grant of summary judgment for Henry Ford Macomb Hospital is AFFIRMED.