*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 12a0410p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

REMARK, LLC,
        *Plaintiff-Appellee/Cross-Appellant,*

        *v.*

ADELL BROADCASTING CORPORATION, d/b/a/
WADL-TV,
        *Defendant-Appellant/Cross-Appellee.*

Nos. 11-2349/2442

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:10-cv-12767—George C. Steeh, III, District Judge.

Argued: October 10, 2012

Decided and Filed:  December 18, 2012

Before:  SUTTON, GRIFFIN and WHITE, Circuit Judges.

_____

### COUNSEL

**ARGUED:** William J. McHenry, Farmington Hills, Michigan, for Appellant.  Todd Rhys Mendel, BARRIS, SOTT, DENN & DRIKER, PLLC, Detroit, Michigan, for Appellee.  **ON BRIEF:** Mark A. Cantor, Robert C.J. Tuttle, Chanille Carswell, BROOKS KUSHMAN P.C., Southfield, Michigan, for Appellant.  Todd Rhys Mendel, BARRIS, SOTT, DENN & DRIKER, PLLC, Detroit, Michigan, for Appellee.

        SUTTON, J., delivered the opinion of the court, in which GRIFFIN, J., joined, and WHITE, J., joined in the result.  WHITE, J. (pp. 8–9), delivered a separate concurring opinion.

———————————

**OPINION**

———————————

SUTTON, Circuit Judge.   Remark advertises radio stations with television commercials featuring women lip-syncing radio content.  When Adell ran similar ads for television station WADL, Remark threatened to sue.  The parties appeared to resolve this initial tempest through a settlement.  Adell tried to back out of the settlement, however, prompting Remark to follow through on its threat and to sue to enforce the settlement. The district court determined that Adell had breached the settlement and granted Remark summary judgment.  We affirm.

I.

Remark, a California corporation, produced a distinctive series of television commercials for radio stations known by some as the "remarkable mouth" or "hot lips" commercials.  The commercials begin with a shot of a classically attractive woman.  The camera then focuses on the woman's mouth as she begins lip-syncing content from the advertised station.   The camera zooms back, and a male voice says, "You have a remarkable mouth."   The woman responds that the advertised radio station "is a remarkable station."  The camera zooms in once more, and the woman lip-syncs a final segment.  R.19 ¶ 9.  The United States Copyright Office issued a copyright for a version of this commercial in 1980.  U.S. Reg. No. PA 64-936.  The original holder of the copyright assigned it to Remark, which registered it with the Copyright Office in 2002.

WADL, a Detroit television station, broadcast two commercials that resemble the copyright.  After the commercials aired, Remark sent a cease-and-desist letter to Adell, the producer of the commercials. R.19-8 at 2.  After some negotiation, the parties agreed that Adell would pay $50,000 to settle Remark's claims.  Remark drafted a settlement agreement, and Adell produced a revised version, which the parties exchanged through e-mail. Remark's counsel e-mailed Adell's counsel saying that Remark "agree[d] to all of your proposed changes" and asking Adell to create "a final version for execution."

R.35 at 3.  Adell forwarded a final version.  R.19-9 at 3–7.  Remark signed and returned the originals to Adell, but Adell never signed the agreement.  It instead retained new counsel and for the first time balked at the $50,000 figure, offering to settle for a more "reasonable"—lower—amount.  R.26-6 at 3.

Remark filed this lawsuit, claiming among other things that Adell breached the settlement agreement.  The district court granted Remark's motion for summary judgment but denied its request for attorney's fees.  The parties appeal their respective losses.

II.

The question in this case is straightforward:  Did the parties settle their dispute?  And the standard of review of the district court's decision is equally straightforward:  We give a fresh look to its summary-judgment decision.  *Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012).

If parties to a pending or threatened lawsuit settle their dispute, the failure of one party to adhere to the terms of the settlement—a type of contract—gives rise to a breach of contract action.  As it turns out, there are two potentially enforceable contracts here.  One arises from the parties' initial e-mails expressing a meeting of the minds about the material terms of a settlement:  Remark would drop its copyright (and other) claims for $50,000, and Adell would stop airing "remarkable mouth" commercials.  On December 11, 2009, Adell's counsel e-mailed Remark's counsel with "proposed revisions to the settlement agreement."  R.35 at 3.  On December 14, 2009, Remark's counsel wrote back, saying, "Because we'd like to get this wrapped up, we will agree to all of your proposed changes."  *Id.*  The former was a written offer, the latter a written acceptance.  No one complains that one lawyer or the other lacked authority to bind his client.  And no one complains that the December 11 version of the agreement is different from the one Remark ultimately signed.  Taken together, the e-mails reflect an agreement with respect to all material terms of the settlement.  *See Kloian v. Domino's Pizza, L.L.C.*, 733 N.W.2d 766, 770–71 (Mich. Ct. App. 2006).

The other agreement arises from the next exchange of e-mails and documents. In the same December 14, 2009 e-mail, Remark asked Adell to create a final version of the agreement for execution. On December 22, 2009, Adell complied and sent Remark a final version of the agreement. Remark signed the agreement that day and returned two copies on January 5, 2010. Adell's counsel responded, saying it had forwarded the documents to Adell for signature. This last exchange—a settlement document offered by Adell and accepted by a Remark representative's signature—also constituted a binding offer and an acceptance. Once again, the agreement contained simple terms and basic objectives. The five-page agreement said that Remark would settle its claims for $50,000, and that Adell would take the offending commercials off the air. And once again, no one alleges that the agents of either company lacked authority to bind their principals. Taken together, the e-mails conveyed an objective meeting of the minds as to each of the material terms, and as such they meet all of the requirements of an enforceable contract under Michigan law. *See Kloian*, 733 N.W.2d at 770–71.

To all of this, Adell offers one retort: It did not sign the final version of the written settlement agreement. Yet a prior meeting of the minds is not undone by the decision of one party to back out of the last version, even if it is the most formal version, of a settlement agreement. *See Scholnick's Importers-Clothiers, Inc. v. Lent*, 343 N.W.2d 249, 253 (Mich. Ct. App. 1983). The question is whether the parties reached agreement on the material terms of the contract/settlement. If they did, the later decision of one party not to sign a formal memorialization of that agreement does not by itself retroactively change the agreement already reached. *Id.*

The Restatement of Contracts lays out the basic rule and the exception to it. The rule: "Manifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifest an intention to prepare and adopt a written memorial thereof." Restatement (Second) of Contracts § 27. The exception: "[B]ut the circumstances may show that the agreements are preliminary negotiations." *Id.*; *see Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 455–56 (Mich. 2003) (relying on the Restatement of Contracts in

resolving a contract dispute); *Customized Transp., Inc. v. Bradford*, 114 F.3d 1186 (6th Cir. 1997) (unpublished table decision) (applying Michigan law and relying on § 27 to find an enforceable contract notwithstanding failure to execute); *cf. Lansing Pavilion v. Eastwood*, Nos. 281811 *et al.*, 2009 Mich. App. LEXIS 1666, at *11 (Mich. Ct. App. Aug. 6, 2009) (quoting § 27 cmt. b).

The comments to § 27 elaborate on the rule and the exception. As to the former, they say:

> Parties who plan to make a final written instrument as the expression of their contract necessarily discuss the proposed terms of the contract before they enter into it and often, before the final writing is made, agree upon all the terms which they plan to incorporate therein. This they may do orally or by exchange of several writings. It is possible thus to make a contract the terms of which include an obligation to execute subsequently a final writing which shall contain certain provisions. If parties have definitely agreed that they will do so, and that the final writing shall contain these provisions and no others, they have then concluded the contract.

Restatement (Second) of Contracts § 27 cmt. a.

As to the latter, they say:

> Among the circumstances which may be helpful in determining whether a contract has been concluded are the following: the extent to which express agreement has been reached on all the terms to be included, whether the contract is of a type usually put in writing, whether it needs a formal writing for its full expression, whether it has few or many details, whether the amount involved is large or small, whether it is a common or unusual contract, whether a standard form of contract is widely used in similar transactions, and whether either party takes any action in preparation for performance during the negotiations. Such circumstances may be shown by oral testimony or by correspondence or other preliminary or partially complete writings.

*Id.* cmt. c; *see also Mich. Broad. Co. v. Shawd*, 90 N.W.2d 451, 456 (Mich. 1958) (listing similar factors).

The problem with Adell's theory of the case is that it invokes one, and only one, reason to apply the exception—that Adell never signed the last version of the agreement,

no matter how many times the company assented to the material terms of it. Everything else cuts against it. Adell offers no written evidence, whether in the form of letters or e-mails, that the company reserved its right to back out of the agreement until a final signature appeared. It offers no oral evidence that the company reserved its right to back out of the agreement until a final signature appeared. It indeed offers no evidence of any kind that the settlement agreement is inconsistent with prior oral and written exchanges between the parties. It does not argue that the deal was a complex one that normally would not be completed until the final document was signed. Nor could it. This was a simple five-page agreement that could have been completed in four fewer pages: Adell would pay $50,000 and drop the commercials in return for Remark dropping its lawsuit. And Adell does not complain that the agreement required authorization by other officers of the company.

All Adell argues is that it reserved assent until the final writing had been signed—that the execution of the formal agreement was a material term of the contract, and thus unmet so long as the document remained unsigned. Yet there is no contemporaneous, or for that matter later, evidence to support such a reservation, whether in the form of oral or written communications between the parties. All we have is unexceptional language in the agreement saying the contract would be "effective as of the date the parties sign the Agreement." Like the district court, we think this boilerplate provision amounts to a reference point for the date upon which payment would be due, not a material term of the agreement. Were it otherwise, a subsequent decision to reduce an agreement to a more formal writing always would give the parties one last chance to back out of (*i.e.*, undo) the agreement, making oral agreements and informal written agreements a relic and reversing the Restatement's rule and exception. At oral argument, Adell confirmed as much, acknowledging that under its theory of the case Adell could back out of this agreement at the time of signing (with no other reservation of rights), offer to pay $40,000 to settle the case, proceed to make a deal, then repeat the exercise at the next time of signing, make a new deal for $30,000, and so on. Parties who wish to dicker in such sharp-elbowed fashion and in the context of

such a simple, straightforward settlement must reserve their rights to do so.  Adell did no such thing.

Adell persists that the question at hand—whether the parties intended to require an executed document—is a factual issue, precluding the entry of summary judgment against it.  But Adell offers no competing forms of evidence for a jury to consider.  On this record, "[t]he only questions of contract interpretation in this case are matters of law," *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 422 (6th Cir. 2008), and the district court properly answered those questions, *see Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 815 (7th Cir. 1987) (noting that relevant evidence regarding contract formation "often will be undisputed, making summary judgment appropriate").

One more thing.  The district court did not abuse its discretion in failing to award attorney's fees to Remark.  The court reasoned that Adell's litigation position was not the product of bad faith.  *See Shimman v. Int'l Union of Operating Engineers, Local 18*, 744 F.2d 1226, 1229 (6th Cir. 1984).  It may be that Adell's arguments were unconvincing in the end, but that does not make them sanctionable.  They were colorable, if flawed, arguments, or at least the district court permissibly could so conclude.

III.

For these reasons, we affirm.

―――――――――――

**CONCURRENCE**

―――――――――――

HELENE N. WHITE, Circuit Judge, concurring.   Because I view the case somewhat differently than the majority, I write separately.

The record is devoid of attorney or party depositions or affidavits in support or defense of the motion for summary judgment; no one testified that after some negotiation, the parties agreed that Adell would pay $50,000 to settle Remark's claim. The parties offered no evidence in support of their positions other than portions of the written correspondence of the attorneys.   Thus, the evidence of negotiation and agreement must be found in this correspondence, and we cannot know whether the case was settled without examining the letters, emails and attachments.   The majority opinion's factual statement that after some negotiation the parties agreed to settle the matter for $50,000 is actually a legal conclusion, and answers the ultimate question presented.

The initial letter from CMI (Remark) to WADL (Adell), dated August 12, 2009, provides no evidence of agreement or settlement.   The next document in the record is a December 11, 2009 email from WADL's counsel, Robin Asher, to Larry Stein, CMI's counsel.   This email simply states:   "Attached is a redline version of our proposed revisions to the settlement agreement between CMI Films and WADL.   Please contact me to discuss at your convenience."   No redline version made its way into the record, however.   We do not know what the original proposed agreement provided, only that the parties agree that it was drafted by CMI's counsel in early December.   Nor do we know what discussions or communication led to the drafting of that agreement, or what changes WADL proposed.   Thus, as of December 11, we only know that WADL provided CMI with proposed revisions to an agreement the content of which is unknown.

On December 14, Stein responded to Asher that "We've reviewed your proposed revisions.   Because we'd like to get this wrapped up, we will agree to all of your

proposed changes. Please incorporate them into a final version for execution. As a reminder, payment is due to CMI within 7 business days of execution. I will follow up with method and address, etc. Thank you." Although the December 11 and 14 emails may indeed be evidence of an offer and acceptance, nothing can rest on this because the record provides no information regarding the terms offered or accepted. The emails tell us nothing about the proposed settlement, except that apparently it contemplated that WADL would pay some undisclosed sum to CMI. Thus, I cannot agree on this record that a breach of contract action can be maintained based on this first exchange of emails.

On December 17, Stein again emailed Asher asking: "When can we expect a copy of the agreement for our execution? Let's get this fully resolved, with payment, before the Christmas holiday." On December 22, Asher sent an email to Stein stating: "Attached is a Final Version of the CMI v. WADL Settlement Agreement. Please have your clients execute the Agreement and return two originals to me for execution by WADL. Once the Agreement has been fully executed, we will return one of the original fully executed Agreements and arrange for payment of the settlement." Attached to the copy of the December 22 email that is part of the record is a copy of the only version of the Agreement in the record. This copy of the Agreement has been signed by CMI and Remark and dated December 22. Obviously, although the partially executed Agreement is attached to the copy of Asher's December 22 email found in the record, it was not an attachment to that email when sent. The Agreement that was actually attached would have been blank. We can fairly assume, however, that a copy of that Agreement was executed later that same day by CMI and Remark.

The terms offered by WADL were in the Agreement attached to Asher's December 22 email, and do not suggest that WADL's agreement was contingent on its own execution. The Agreement contained all the essential terms and was signed immediately by CMI and Remark. This acceptance was communicated to WADL on January 5, well before WADL attempted to withdraw from the Agreement on January 17. I therefore concur.