NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0184n.06

No. 12-3215

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Feb 20, 2013*
DEBORAH S. HUNT, Clerk

CUYAHOGA VALLEY RAILWAY COMPANY;
RIVER TERMINAL RAILWAY COMPANY;
ALIQUIPPA & SOUTHERN RAILROAD COMPANY;
CHICAGO SHORTLINE RAILWAY COMPANY;
MONONGAHELA CONNECTING RAILROAD COMPANY,

     **Plaintiffs-Appellees,**

v.

U.S. BANK TRUST NATIONAL
ASSOCIATION,

     **Defendant-Appellant,**

and

UNITED MINE WORKERS OF AMERICA
COMBINED BENEFIT FUND TRUSTEES;
PENSION BENEFIT GUARANTY CORPORATION;
NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH PA; HSBC BANK USA,
NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE,

     **Defendants.**

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

BEFORE:  MOORE and COOK, Circuit Judges; BERTELSMAN, District Judge.[*]

OPINION

BERTELSMAN, District Judge:

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Defendant-Appellant, U.S. Bank Trust ("U.S. Bank"), appeals the District Court's order enforcing a settlement agreement.

Because the District Court failed to conduct an evidentiary hearing on the factual disputes surrounding the purported settlement agreement, the District Court's order enforcing the settlement is **VACATED**, and the case is **REMANDED**.

I.

Plaintiffs-Appellees are corporations that formerly operated as railroads in Ohio, Pennsylvania, or Illinois. R. 47 at p. 1. Each was wholly-owned by LTV Steel Company, Inc. ("LTV"). *Id.* On December 29, 2000, LTV and 48 of its affiliates (not including Appellees) filed Chapter 11 bankruptcy petitions. *Id.* In the course of its bankruptcy, LTV abandoned its interests in Appellees. *Id.* In its Abandonment Motion filed in the United States Bankruptcy Court for the Northern District of Ohio, LTV represented that Appellees only held assets of approximately $12 million in cash ("Liquidation Proceeds"). *See* R. 45-2 at ¶ 16. Appellees are no longer operating railroads and are in the process of winding up their affairs. R. 47 at 1.

Defendant-Appellant U.S. Bank is the indenture trustee for the holders of the 11.75% Senior Notes Due 2009 issued by LTV. *Id.* at 2. As a result of LTV's bankruptcy, U.S. Bank has alleged a claim against Appellees in the approximate amount of $516,820,153.30. *Id.* In addition to U.S. Bank, the other defendants/claimants include the United Mine Workers of America Combined Benefit Fund Trustees ("UMWA"), Pension Benefit Guaranty Corporation ("PBGC"), National

No. 12-3215
*Cuyahoga Valley Railway, et al. v. U.S. Bank*

Union Fire Insurance Company of Pittsburgh PA ("National Union"), and HSBC Bank USA,

National Association, as Indenture Trustee ("HSBC").[1]  *Id*. at 2-3.

Appellees currently possess approximately $11 million in cash.  *See* Appellees' Brief at 11.

Recognizing the relatively small amount available to satisfy the unpaid claims, all parties (excluding

National Union which intervened in mid-2010) engaged in protracted, detailed settlement

discussions beginning in 2005.  *Id*.

In November of 2008, after extensive negotiations, the parties agreed upon the allocation of,

at that time, $12.3 million in Liquidation Proceeds, and they reduced that agreement to writing.  R.

47 at 2-3.  Appellees were then to file an interpleader complaint, after which the parties would

present a finalized settlement agreement to the District Court.  R. 47 at 7; R. 44-3.

The record is devoid of evidence, however, of any further progress until May of 2010.  At

that time, the November 2008 agreement was modified to reflect National Union's claim for the

Liquidation Proceeds, to reduce the amount of Liquidation Proceeds available for distribution to $12

million, and to include other non-material alterations.  *See* R. 46-1.

---

[1]The UMWA, an employee benefit plan, alleged that the Appellees are jointly and severally liable to it for unpaid premiums and deductible amounts paid out under the policies in the aggregate amount of $37,000,000.00.  R. 47 at p. 2.  The PBGC, the federal agency created to protect pension benefits in private sector pension plans known as defined benefit plans, alleged that the Appellees have pension liabilities in the amount of $2,832,600,000.  *Id*. at p. 1.  HSBC, as the indenture trustee for the holders of the 8.20% Senior Notes Due 2007 issued by LTV, alleged a claim against Appellees in the approximate amount of $471,558,447.59.  *Id*. at p. 2.  National Union, an insurer that provided coverage to LTV and its subsidiaries and associates, claimed that Appellees are jointly and severally liable for unpaid premiums and deductible amounts in the aggregate amount of $7,758,832.00.  *Id*.

3

Additionally, U.S. Bank circulated for review and comment a draft motion that it intended to file in the Bankruptcy Court. *See* R. 44-4. This motion referenced the parties' proposed distribution of the Liquidation Proceeds. *Id.*

On July 5, 2010, counsel for UMWA sent an email to all counsel involved in the matter and, in part, stated, "I need to know from each of you point blank whether you contemplate some other action than what we have discussed, presentation of the signed settlement agreement within a short time after filing the interpleader complaint."[2] *See* R. 44-3.

The following day, counsel for U.S. Bank stated, ". . . as of the present date, my client has expressed no change (sic) its original intention to settle this matter on the terms agreed to a number of years ago." *Id.*

Three days later, on July 9, 2010, U.S. Bank filed a status report in the Bankruptcy Court stating, in part, that:

> [O]nce the respective right and priorities of the unsecured creditors in and to the . . . liquidation proceeds have been established and the terms of a proposed settlement and release (the "Settlement Agreement") agreed upon, the Distribution Trust will apply to the Bankruptcy Court for approval of the Settlement Agreement and the pro rata distribution thereunder of the . . . liquidation proceeds.

R. 45-3. One week later, Appellees filed their interpleader complaint in the District Court. R. 1. On October 28, 2010, U.S. Bank filed an Amended Answer and Counterclaim, containing a demand for a full accounting from the Appellees of the Liquidation Proceeds. R. 27.

---

[2] There is no indication in the record as to why counsel for UMWA was apparently suddenly concerned about the potential actions of the other parties in regard to the agreement which had been previously negotiated.

While the remaining parties were filing their responsive pleadings, counsel for the parties were also exchanging emails about how best to proceed to the resolution of this matter. *See* R. 45-8. On November 19, 2010, counsel for Appellees emailed all the parties stating: "It is my understanding that we want to present the settlement agreement to the court at the case management conference. Are we presenting it as a consent judgment?" *Id*. On December 1, 2010, counsel for HSBC responded, "I believe the intention was to present the settlement agreement[,] . . .[but] it would be desirable that the accounting piece be resolved so that it will not have to be raised at the status conference." *Id*.

Additionally, counsel for PBGC sent an email to Appellees' counsel on December 21, 2010, agreeing that the accounting should be considered when scheduling a case management conference with the District Court. *Id*. On December 28, 2010, co-counsel for HSBC sent a follow-up email to Appellees' counsel requesting a status update on the "accounting requested by a number of the parties." *Id*. Shortly thereafter, Appellees' counsel responded that he "expect[ed] to be able to provide documentation by the end of next week or beginning of the following week." *Id*.

On January 17, 2011, Appellees' counsel sent account statements for 2007-2010 to all counsel. *Id*. In response, counsel for HSBC stated that HSBC would need a specific certificate "before we can agree the accounting request is satisfied." *Id*. Additionally, counsel stated, "[u]ntil we have such a certificate, we are reluctant to sign on to the motion for a status conference since we would not want the court to have the conference before we are all comfortable on the accounting issue." *Id*.

On February 4, 2011, counsel for U.S. Bank sent an email to counsel for HSBC expressing that he did not favor a status conference until he had "full possession of the facts." *See* R. 45-10. On April 25, 2011, Appellees' counsel sent an email to all parties forwarding "the latest version of the Settlement Agreement and Release" in anticipation of the case management conference with the District Court. *See* R. 45-11. In response, U.S. Bank's counsel stated:

> While U.S. Bank is in full agreement with the proposed division of [] proceeds held in trust for the benefit of the respective parties defendant, U.S. Bank cannot agree at this time to the release of the [Appellees], their officers, directors, attorneys, agents, and representatives, et al. until further discovery is undertaken.

*Id*.

The following day, the District Court conducted a telephonic Case Management Conference wherein each of the parties was represented. R. Minutes of Proceedings (April 27, 2011). The District Court continued the Case Management Conference until May 3, 2011 in order to give the parties time to discuss how to proceed. *Id*. At the May 3, 2011 conference, U.S. Bank reiterated its desire to conduct discovery, but the other parties indicated their desire for an early resolution. R. Minutes of Proceedings (May 3, 2011). Appellees indicated that they would not resolve the case without all parties involved, but, rather, indicated their preference to file a motion to enforce settlement. *Id*.

On June 6, 2011, Appellees filed a motion to enforce the settlement agreement. R. 44. U.S. Bank filed a response in opposition on July 5, 2011, and Appellees filed a reply in support of their motion shortly thereafter. *See* R. 45, 46. On February 8, 2012, the District Court, without holding an evidentiary hearing, entered an order enforcing the settlement agreement. *See* R. 47.

U.S. Bank timely appealed the District Court's order enforcing the settlement agreement. R. 49. The remaining defendants/claimants did not oppose Appellees' motion to enforce the settlement, and, thus, they are not before this Court.

II.

"This Court reviews for clear error the district court's factual determination that the parties had agreed to settlement terms; however, we review the district court's decision to grant a motion to enforce the settlement based on its preliminary factual finding for an abuse of discretion." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645 (6th Cir. 2001) (citing *Therma-Scan, Inc. v. Thermoscan, Inc.,* 217 F.3d 414, 418 (6th Cir. 2000)).

No evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present. *Id*. at 646. However, the District Court must conduct an evidentiary hearing when the situation presents substantial factual issues related either to the formation or the consummation of the contract. *Bobonik v. Medina Gen. Hosp.*, 126 F. App'x 270, 274 (6th Cir. 2005) (citing *RE/MAX,* 271 F.3d at 646).

"Because settlement agreements are a type of contract, the formation and enforceability of a purported settlement agreement are governed by state contract law." *Smith v. ABN Amro Mortg. Grp. Inc.*, 434 F. App'x 454, 460 (6th Cir. 2011) (citing *Bamerilease Capital Corp. v. Nearburg,* 958 F.2d 150, 152 (6th Cir. 1992)). "Under Ohio law, 'a valid settlement agreement . . . requir[es] a meeting of the minds as well as an offer and acceptance.'" *Id*. (quoting *Rulli v. Fan Co.*, 683 N.E.2d 337, 338 (Ohio 1997)).

III.

U.S. Bank asserts that the District Court erred in holding that the agreement did not need to be executed to be enforceable. *See* Appellant's Brief at p. 35. The fact that a settlement agreement has not been formally executed does not render the agreement unenforceable. *RE/MAX,* 271 F.3d at 646. Additionally, "[s]ignature spaces in the form contract do not in and of themselves require that the signatures of the parties are a condition precedent to the agreement's enforceability." *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.,* 375 N.E.2d 410, 413 (Ohio 1978). However, if parties have agreed that a contract shall not be binding until signed, courts should give effect to that agreement, and, thus, should not enforce the contract without the requisite signatures. *See Allen v. Ford Motor Co.*, 8 F. Supp. 2d 702, 705 (N.D. Ohio 1998) (citation omitted).

U.S. Bank argues that there is a material factual dispute as to whether the parties intended to be bound until the agreement was executed by all parties, and, thus, the District Court was required to conduct an evidentiary hearing. On this point, U.S. Bank directs the Court's attention to the July 5, 2010 email from counsel for UMWA, which states, in relevant part: "I need to know from each of you point blank whether you contemplate some other action than what we have discussed, presentation of the signed settlement agreement within a short time after filing the interpleader complaint." R. 44-3.

The District Court asserted that this email did not evidence an intent not to be bound until the agreement was signed. Instead, the District Court held that the "intent of this lawsuit was to present a signed agreement to this Court for approval," and U.S. Bank's refusal to execute the agreement was the reason the agreement was not signed.

8

However, that finding is belied by the fact that there is no evidence that any of the other claimants had signed the agreement. While the signature spaces on the agreement "do not in and of themselves require that the signatures of the parties are a condition precedent to the agreement's enforceability," *Berjian*, 375 N.E.2d at 413, that does not imply that these signature spaces carry no evidentiary weight whatsoever. In fact, of particular relevance would be whether the other claimants anticipated that the agreement required a signature before it was binding. Unfortunately, there is little in the record indicating those parties' positions on this issue.[3]

Additionally, to the extent that the District Court relied on the July 6, 2010, email from U.S. Bank's counsel as assent to be bound by the agreement, the District Court did so in error. U.S. Bank admits that it agreed to the distribution of the Liquidation Proceeds. *See* Franklin Ciaccio Affidavit at ¶ 10. However, U.S. Bank disputes that it ever agreed to enter into the agreement without an accounting of those Proceeds. *Id*. at ¶ 11. Without more information about UMWA's purpose for initiating this email, this Court cannot find that U.S. Bank's July 6, 2010 response evidences its assent to be bound by the agreement.

---

[3]Interestingly, the only indication of the position taken by the other claimants is seen in the District Court's minutes of proceedings entered on April 27, 2011 and May 3, 2011. The District Court, in the minutes of that conference, stated that there had been "discussion regarding possible distribution of the funds according to a settlement agreement which has been reached in principle but not yet executed." R. Minutes of Proceedings (April 27, 2011). If anything, this statement implies that the agreement was not yet finalized because it had not been signed by all the parties. Additionally, the District Court's minutes entered on May 3, 2011 indicate that "four of the five defendants wish to proceed to an early resolution of the case." R. Minutes of Proceedings (May 3, 2011). While these claimants may have wanted to receive their small percentage of the proceeds as expeditiously as possible, that does not necessarily indicate that a signature on the agreement was not a prerequisite to enforceability.

In fact, this email exchange could reasonably be construed to support U.S. Bank's position: that it had not changed its stance in regard to the distribution of the Liquidation Proceeds, but at no time did it assent to being bound by the agreement. More specifically, counsel's use of the phrase "as of the present date" could reasonably be read to show that, while U.S. Bank still agreed to the terms regarding the distribution of the Liquidation Proceeds, it had not yet agreed to be bound by the contract and it reserved the right to change its position.

Furthermore, three days after this email, U.S. Bank filed a status report in the Bankruptcy Court in which it indicates that it has not yet assented to the terms of the settlement. *See* R. 45-3. Again, without more evidence about the circumstances surrounding this email, this Court cannot agree that this email confirms U.S. Bank's intent to be bound by the agreement.[4]

Therefore, the evidence produced by U.S. Bank was sufficient to create a material factual dispute as to whether the agreement was meant to be enforceable without the requisite signatures. As such, the District Court erred in failing to conduct an evidentiary hearing. *RE/MAX*, 271 F.3d at 646. Additionally, the July 6, 2010 email does not unambiguously confirm U.S. Bank's assent

---

[4]Appellees also cite to the May 2, 2010, draft motion circulated by U.S. Bank as evidence that U.S. Bank had confirmed the terms of the settlement agreement. However, the District Court "conclude[d] that the draft motion probably does not stand as evidence of US Bank's approval of the Settlement Agreement." R. 47 at p. 6. Although the District Court did not rule out this draft motion as evidence of assent to the settlement agreement, it also expressly did not consider this draft motion in finding there to be a binding settlement agreement. *Id*. Moreover, U.S. Bank asserts that the reason this draft motion was never final or finalized was, in part, because the settlement agreement had never been finalized. Although Appellees dispute this contention, a reasonable fact-finder could agree that this draft motion was not evidence of assent to the settlement agreement because the settlement agreement, in fact, had not been finalized. Once again, an evidentiary hearing would assist in clarifying the ambiguities surrounding this draft motion.

to be bound by the agreement. Similarly, an evidentiary hearing would assist in the interpretation of this email.

IV.

U.S. Bank, through counsel, admits that it did agree to the distribution of the Liquidation Proceeds, but states that it would not agree to the settlement agreement until it was provided with information and documentation regarding how Appellees' assets were sold and how the proceeds were invested after the assets were sold.

U.S. Bank further states that before, during, and subsequent to the time when the parties were negotiating how the Liquidation Proceeds would be distributed, it advised Appellees that a full accounting of the Liquidation Proceeds would be required before it could agree to a final settlement agreement. Thus, U.S. Bank asserts that it had no intent to be bound by the settlement until it received a full, satisfactory accounting of the Proceeds.

In its order enforcing the settlement, the District Court acknowledged that U.S. Bank had asserted that Appellees were aware that they had to provide a full accounting before U.S. Bank would agree to be bound by the settlement agreement. *See* R. 47 at p. 7. However, the District Court rejected that assertion because U.S. Bank failed to provide evidence of any written communication that an accounting was required before it would agree to the settlement. *Id*. at pp. 7-8. Additionally, in rejecting U.S. Bank's assertion, the District Court cited to the fact that the settlement agreement itself contained no accounting requirement. *Id*. at p. 8.

The District Court clearly erred, however, by disregarding the affidavit of Franklin Ciaccio, U.S. Bank's counsel, in which he avers that U.S. Bank had advised Appellees that an accounting

11

would be required before they would enter into the settlement agreement. *See* Franklin Ciaccio

Affidavit at ¶ 11. Appellees, not surprisingly, refute this contention, arguing that, "[h]ad US Bank

made the repeated demands for an accounting as suggested . . ., surely there would be written

communications referencing those requests." Appellees' Brief at p. 24.

Appellees acknowledge that there were extensive communications concerning the request

for an accounting, but they assert that these requests were made after U.S. Bank had already agreed

to the settlement. *Id*. at pp. 24-25. More specifically, Appellees assert that U.S. Bank confirmed the

agreement in its counsel's July 6, 2010 email, and any evidence of U.S. Bank's request for an

accounting after this email is irrelevant. *Id*. at p. 24.

However, as stated previously, this Court cannot find, on the record before it, that the July

6, 2010 email constituted U.S. Bank's assent to be bound by the agreement. Thus, the evidence cited

by U.S. Bank subsequent to the July 6, 2010 email *is* relevant as to whether an accounting was

required before U.S. Bank would enter into the agreement.[5] The District Court clearly erred in

disregarding this evidence and summarily granting Appellees' motion to enforce the settlement.[6]

---

[5]In addition to U.S. Bank's counterclaim for an accounting, *see* R. 27, the parties sent a number of emails to each other beginning on November 19, 2010 referencing an accounting as a prerequisite to presenting the District Court with the settlement agreement. *See* R. 45-8; R. 45-10; R. 45-11.
[6]While there are similarities between this Court's recent decision in *Remark, LLC v. Adell Broad. Corp.*, 702 F.3d 280 (6th Cir. 2012), and the case at bar, the cases are ultimately distinguishable. In *Remark*, this Court found that the defendant-appellant had unambiguously assented to the settlement agreement, notwithstanding the fact that it had not signed the agreement. *Id*. at 284-85. Here, this Court cannot find, on the record before it, that U.S. Bank unambiguously assented to the settlement agreement. Additionally, U.S. Bank has provided evidence of a factual dispute as to whether the parties' signatures were a prerequisite to the enforceability of the agreement. Moreover, the parties' recurring discussion of the accounting requirement supports U.S. Bank's position that an accounting was a prerequisite to the enforeability of the agreement. Thus, *Remark* is distinguishable from the case at bar.

Therefore, there is also a material factual dispute as to whether U.S. Bank was willing to enter into the settlement agreement without a full and satisfactory accounting. As such, "the District Court erred in failing to conduct an evidentiary hearing which would have at least afforded an opportunity for the Court to properly judge the credibility of the affiants and an opportunity for their cross-examination." *See Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 622 (6th Cir. 1973).

V.

For the foregoing reasons, the District Court's order enforcing settlement is **VACATED**, and the case is **REMANDED** for an evidentiary hearing on the factual disputes surrounding the purported settlement agreement.

No. 12-3215
*Cuyahoga Valley Railway, et al. v. U.S. Bank*

COOK, Circuit Judge, dissenting. I would affirm the judgment of the district court enforcing the settlement consistent with the reasoning of its February 8, 2012 opinion that meets each of the arguments of the appellant for reversal.