RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0067p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

PATRICIA LEVINE,

                             *Plaintiff-Appellant*,

                                                                No. 22-1388

     *v.*

LOUIS DEJOY,

                             *Defendant-Appellee*.

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:20-cv-01208—Paul Lewis Maloney, District Judge.

Argued: January 24, 2023

Decided and Filed: April 10, 2023

Before: CLAY, WHITE, and THAPAR, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Glenn L. Smith, WHEELER UPHAM, P.C., Grand Rapids, Michigan, for Appellant. Carolyn A. Almassian, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Glenn L. Smith, John M. Roels, WHEELER UPHAM, P.C., Grand Rapids, Michigan, for Appellant. Carolyn A. Almassian, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

     CLAY, J., delivered the opinion of the court in which WHITE, J., joined. THAPAR, J.. (pp. 18–22), delivered a separate dissenting opinion.

---

**OPINION**

---

CLAY, Circuit Judge.    Plaintiff Patricia Levine, an African-American woman, commenced this action under Title VII, 42 U.S.C. §§ 2000e, *et seq.*, alleging that her employer, the United States Postal Service ("USPS"), discriminated against her by failing to promote her on the basis of race.   The district court granted USPS's motion for summary judgment and dismissed the action.[1]   We **REVERSE** for the reasons set forth below.

## I.  BACKGROUND

### A.  Factual Background

In April 2015, Levine applied for the position of supervisor of customer services at the main post office in Grand Rapids, Michigan.  USPS did not select Levine for the position. Instead, it hired a white employee whom Levine alleges was significantly less qualified than Levine.   USPS disputes Levine's allegations that the failure to hire her was racially discriminatory.   In considering factual disputes, the Court must "view 'the inferences to be drawn from the underlying facts . . . in the light most favorable to the party opposing the motion' for summary judgment."  *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 394 n.7 (6th Cir. 2008) (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

#### 1.  The Job Posting

The parties dispute the position's requirements.   Although the parties agree that experience supervising retail operations would be relevant to a candidate's application, they disagree as to the relevance of experience supervising postal carriers.   According to the job posting and job description, supervisors of customer services supervise carriers and carrier activities.  However, when USPS posted the position, the main post office did not have carrier

---

[1]Levine sued Defendant Louis DeJoy in his official capacity as Postmaster General.  Because DeJoy plays no role in this litigation, the Court refers to Defendant as USPS.

units.  Pointing to that fact, Levine contends that the job posting and job description were generic, and that a "successful candidate" for the main post office position "would only supervise a retail unit, *i.e.*, the counter line at the [main post office] plus the two satellite retail stations that reported to the [main post office]."  Appellant's Br. at 6–7.

Ultimately, fifteen candidates, including Levine, applied for the position.  A three-member review committee evaluated those applicants' written applications and referred five candidates to Theresa Mullins, the selecting official and Postmaster General for Grand Rapids.  After interviewing those five candidates, Mullins selected Kathleen Peare for the position.  Both Mullins and Peare are white.

### 2.  Qualifications

#### a.  *Levine's Qualifications*

When Levine applied for the position, she had worked for USPS for over 27 years.  During those nearly three decades, she held a variety of positions.  Notably, Levine had extensive and apparently successful retail experience.  For example, she ran Grand Rapids' Eastown Stations Retail Unit for several years.  During that time, her unit earned perfect scores for four consecutive years when "mystery shopped," which is where a "mystery shopper" reports to USPS about the quality of service provided by the USPS retail employees.  Mystery shopping is the only independent measure of retail unit performance that USPS uses.[2]

Later in her career, the main post office retail supervisor abruptly retired and USPS asked Levine to serve as acting supervisor because she could "step into the position immediately without training . . . ."  Levine Decl., R. 79-3, Page ID #510; *see also* Appellee's Br. at 11.  While serving in that position, Levine's unit earned a perfect mystery shopper score.  Levine believes that the perfect score was a first in the unit's history.  She left that position only because her daughter became ill.  Beyond Levine's objective success as a retail supervisor, the record includes other indicators of success:  that her manager recommended her highly; that she trained

---

[2]At oral argument, USPS asserted that mystery shoppers evaluate the performance of retail clerks, not their supervisors.  That argument defies common sense:  supervisors are measured in large part based upon how well their subordinates perform.

clerks on retail operations throughout Grand Rapids; and that Mullins asked Levine to train Peare after Peare received the position for which both Levine and Peare had competed. Two other elements of Levine's application stand out. First, in addition to her professional experience, Levine possesses three post-secondary degrees: an associate degree in accounting; a bachelor's degree in business and management; and a Master of Business Administration degree. Second, Levine lists seven different awards from USPS that she received throughout her career.

According to Mullins, Levine's interview indicated that while Levine is "very likable," she might be too accommodating of a supervisor. Mullins Dep., R. 77-1, Page ID #441. Specifically, Mullins expressed concern that Levine did not detail how she would hold employees "accountable." *Id.* Importantly, Mullins purports to have reached that conclusion based upon Levine's interview, not her historical on-the-job performance.

### b. *Peare's Qualifications*

Peare's formal academic training ended with high school. When she submitted her application, Peare had worked for USPS for nearly eight years. During that time, she spent nearly two years as an acting supervisor of customer services at the main post office. Although Peare began her career as a carrier and most of her supervisory experience involved carrier activities, Mullins avers that Peare learned clerk and retail operations during her time as a supervisor.

Mullins purports that Peare interviewed well. She testified that she was particularly impressed with Peare's knowledge of the contract and grievance process. She also indicated that she appreciated how Peare is "not afraid to confront someone. [Peare does not] shy away from a challenge or dealing with a difficult employee." Mullins testified that she made her selection "based on the answers to the questions during the interview and the written application." *Id.* at Page ID #432.

### c. *Relative Qualifications*

In her brief on appeal, Levine provides a table comparing many of her and Peare's qualifications. The table's substance is undisputed.[3]

| | Levine | Peare |
|---|---|---|
| Education | Master's Degree (Business and Management); Bachelor's Degree (Business and Management); Associate Degree (Accounting) | High School Diploma |
| Experience as Acting Supervisor in USPS | 16+ months | 24+ months |
| Postal Experience | 27 years 7 months | 7 years 11 months |
| USPS Retail Experience (lead clerk position and acting supervisor) | 5 years 1 month | unknown (20 months split between running delivery unit and retail unit) |
| Acting Supervisor Distribution Operations | 6 months | — |
| Acting Supervisor Customer Service (Delivery Function) | — | 5 months + unknown period (20 months split between running delivery unit and retail unit) |
| Acting Supervisor Customer Service (Retail at MPO) | 7 months | unknown period (20 months split between running delivery unit and retail unit) |
| Acting EAS Experience | 93.5 months | 24+ months |
| Postal Performance Awards | 7 | — |
| USPS Training Courses | 28 | 15 |
| 100% Mystery Shopper Recognitions While Acting Supervisor MPO | 1 | — |
| 100% Mystery Shopper Recognitions While Overseeing Another Retail unit | 48 consecutive months | — |
| Number of Areas Worked | 6 | 2 |

---

[3]In this table, "MPO" stands for main post office, and "EAS" stands for executive and administrative schedule.

Appellant's Br. at 8.  In her application, Levine highlighted several awards USPS given to her by USPS throughout her career.  Peare, by contrast, did not list any awards or recognition from USPS.

### 3.  Mullins' Hiring Decision

Mullins claims that Peare was the most qualified applicant.  Throughout this litigation, Mullins highlighted (or otherwise alluded to) the following reasons for selecting Peare:  (1) Peare "was already doing the job" because she was the acting supervisor, Mullins Equal Opportunity Aff., R. 18-7, Page ID #102; (2) Peare's strong interview, including her description of her management style and her broad knowledge and experience, Mullins Dep., R. 77-1, Page ID #441–42; and (3) Peare had done well when she served as acting supervisor, *id.* at Page ID #426. Mullins also noted that Levine had declined opportunities to "detail into" the position at issue and into other positions, testifying that Levine "made it clear" to Mullins over the years "that she didn't want to do anything in a supervisory capacity except the main office windows."  *Id*. at Page ID #436.  But Levine testified that she accepted and volunteered for many details and declined only one opportunity—to continue as the acting supervisor of the MPO retail unit— because at that time her daughter had a brain tumor that required surgery.[4]  Later, Mullins said that Levine's decision to decline details did not impact Mullins' hiring decision.

Levine testified that after Mullins selected Peare for the position, she asked Levine to help train Peare.  Mullins neither recalls nor denies asking Levine to train Peare.

### B.  Procedural History

Levine commenced this Title VII racial discrimination action in 2020 after the Equal Employment Opportunity Commission issued Levine a notice of right to sue.  Levine alleged that she was not selected because she is African-American, and that Peare was selected because she is white.

---

[4]Mullins also misstated the length of time that Levine spent detailing into the supervisor position.  Mullins said that Levine spent two months as acting supervisor, but Levine spent seven months in the position and stepped down only to address her daughter's health issues.  *See* Mullins Equal Opportunity Aff., R. 18-7, Page ID #102; Appellant's Br. at 11.

Relevant to this appeal, Levine contends that Mullins has been mendacious throughout the litigation. In making that argument, Levine points to: (1) Mullins' misstatements made under penalty of perjury regarding Levine's experience detailing into the supervisor of customer services position; and (2) Mullins' refusal to acknowledge that Levine had more experience with USPS than Peare. Although Mullins did refuse to acknowledge that Levine had more experience than Peare, she qualified that statement by saying that when a person has "more years" on the job, that "doesn't mean they have more experience." *Id*. at Page ID #434–35.

The district court granted USPS's motion for summary judgment. In granting that motion, the district court determined: (1) that Levine established a *prima facie* Title VII race discrimination claim; (2) that USPS articulated a legitimate, nondiscriminatory reason for its hiring decision; and (3) that Levine failed to demonstrate that USPS's proffered justification for its hiring decision was pretext for racial discrimination. Levine's timely appeal followed.

## II. DISCUSSION

### A. Standard of Review

The Court reviews a district court's grant of summary judgment *de novo*. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389 (6th Cir. 2008). A district court should grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine dispute of material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Once the parties present evidence, the Court's "function is not [] to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *White*, 533 F.3d at 390 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In making that determination, the Court "must draw all inferences in the light most favorable to the non-moving party." *Id.* (citing *Matsushita*, 475 U.S. at 587). "However, 'the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence

on which the jury could reasonably find for the' non-moving party." *Id.* (alteration in original) (quoting *Anderson*, 477 U.S. at 252).

## B. Analysis

Title VII provides that an employer may not "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1).

In this case, Levine acknowledges that the record contains no direct evidence of discrimination. Accordingly, Levine's claims "are subject to the tripartite burden-shifting framework first announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and subsequently modified in *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981)." *White*, 533 F.3d at 391. Under that framework, a plaintiff must first establish a *prima facie* case of disparate treatment. *Burdine*, 450 U.S. at 253. "[I]f the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). "[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (citation omitted).

### 1. Levine's *Prima Facie* Case

"The burden of establishing a prima facie case of disparate treatment is not onerous." *Id.* At this stage, the plaintiff must demonstrate that: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for [her] job; (3) [s]he suffered an adverse employment decision; and (4) [s]he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *White*, 533 F.3d at 391 (citing *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008)).

When USPS moved for summary judgment, it did "not dispute that Levine can satisfy the first three elements in establishing a prima facie case of race discrimination." Op. and Order,

R. 83, Page ID #562–63.   However, USPS asserted that Levine failed to satisfy the fourth element because "she and Peare are not similarly situated in their qualifications and experience." Mem. in Supp. of Mot. for Summ. J., R. 77, Page ID #403–04.   The district court rejected that argument and found that, "by a preponderance of the evidence," Levine met the "not [] onerous" burden of establishing a *prima facie* case."   *Id.* at Page ID #564.   USPS does not challenge that holding on appeal.

### 2.   USPS's Proffered Legitimate, Nondiscriminatory Reasons for Selecting Peare

Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant, who must "rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine*, 450 U.S. at 254.   In satisfying that burden, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons."   *Id.* (citation omitted).   Instead, "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.   To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection."   *Id.* at 254-55 (footnotes omitted).

USPS avers that it selected Peare over Levine because:   (1) Peare had more relevant supervisory experience; and (2) Peare gave a better interview.   USPS seeks to support that averment through Peare's written application, sworn affidavits, and deposition testimony.   Thus, USPS's proffered "reason for its promotion decision is 'clear and reasonably specific,' . . . and is arguably supported by 'admissible evidence which would allow the trier of fact rationally to conclude that the employment decision [was] not motivated by discriminatory animus . . . .'" *White*, 533 F.3d at 392 (quoting *Burdine*, 450 U.S. at 257–58).   On appeal, Levine does not challenge the district court's holding that USPS put forward a legitimate, nondiscriminatory reason for its hiring decision.

### 3.   Pretext

Because USPS articulated a legitimate, nondiscriminatory reason for selecting Peare, Levine must "prove by a preponderance of the evidence that the legitimate reasons offered by the

defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. A plaintiff may establish pretext "either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *White*, 533 F.3d at 392 (alteration in original) (quoting *Burdine*, 450 U.S. at 256). "A plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *Id.* at 393 (citing *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008)).

In the instant case, Levine has provided an abundance of evidence substantiating that she is arguably more qualified for the position than Peare. "[W]hen qualifications evidence is all (or nearly all) that a plaintiff proffers to show pretext, the evidence must be of sufficient significance itself to call into question the honesty of the employer's explanation" for its hiring decision. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006).[5] In determining whether a plaintiff has provided enough evidence "to raise a genuine issue of fact of discriminatory motive," the Court recognizes that employers "are generally free to choose among qualified candidates . . . ." *Id.* at 626 (6th Cir. 2006) (citation and quotations omitted). With those principles in mind, a court ruling on a motion for summary judgment must consider that:

> [i]f a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate—something employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture.

*White*, 533 F.3d at 393 (quoting *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998)); *see also Bender*, 455 F.3d at 620 ("If the plaintiffs have made out a prima facie case of discrimination, the defendant can be awarded summary judgment only if no reasonable jury could conclude that the reasons offered for the [relevant employment decision] were only a pretext hiding a discriminatory motive." (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*,

---

[5]Although the court in *Bender* applied the *McDonnell Douglas/Burdine* burden-shifting framework, *Bender* alleges age discrimination, which Title VII does not address.

360 F.3d 544, 547-48 (6th Cir. 2004))).  To that end, comparative qualifications "may be probative of whether the employer's reasons are pretexts for discrimination." *Burdine*, 450 U.S. at 259.  Levine asserts that the evidence shows she "was a plainly superior candidate, such that no reasonable employer would have chosen Peare over" her, and that "the record contains other probative evidence of discrimination." Appellant's Br. at 16.  USPS, by contrast, acknowledges that "Levine was a viable candidate for the promotion," but avers that "she was not the most qualified when compared with Peare." Appellee's Br. at 16.  The question is whether Levine has offered evidence sufficient for a reasonable juror to "conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job . . . ." *White*, 533 F.3d at 393 (quoting *Aka*, 156 F.3d at 1294).  We conclude that she has.

Levine  highlights the following as evidence of her arguably superior qualifications: "(1) Mullins asked Levine to train Peare after she made her selection; (2) Levine received a 100% mystery shopper score while she was the Lead Clerk at the Eastown retail unit; (3) Levine has received seven different awards during her career, compared to Peare's none;" (4) "Levine completed a higher level of education" than Peare; (5) "Mullins's opinion of the candidates' interviews is subjective; and" (6) "Peare's carrier unit supervisory experience should have been irrelevant."  Op. and Order, R. 83, Page ID #566.  The district court dismissed those facts outright, concluding that they relate only to "Levine's *opinion* as to why she was the superior candidate." *Id*. (emphasis added).  After arriving at that conclusion, the district court observed that "it is well settled that a plaintiff's subjective opinion regarding hiring criteria is irrelevant." *Id.*  Therefore, the district court held, "Levine's arguments regarding her awards, education level, mystery shopper scores, Peare's carrier unit supervisory experience, and Mullins's opinion as to the candidates' interviews are *not afforded any weight*." *Id.* at Page ID #567 (emphasis added).

The district court erred when it failed to afford any weight to those facts.  Those facts, many of which are empirically verifiable and do not constitute Levine's subjective opinion, are probative as to whether "a reasonable employer would have found the plaintiff to be significantly better qualified for the job," and whether that conclusion could lead a reasonable juror to "infer that the employer consciously selected a less-qualified candidate—something employers do not usually do, unless some other strong consideration, such as discrimination, enters into the

picture." *White*, 533 F.3d at 393 (quoting *Aka*, 156 F.3d at 1294). The district court failed to give due consideration to Levine's evidence and arguments that she was significantly more qualified than Peare.

Further, Levine submitted evidence that she has far more education related to business and accounting; more years of postal experience; more retail experience (and therefore more relevant experience); more executive and administrative scheduling experience; and more accolades and positive evaluations from within USPS. Levine's case is most analogous to the plaintiff's case in *White*.

In *White*, the Court observed that the plaintiff "possessed some qualifications for managerial work which [the selected candidate] did not." *Id.* at 394. Among those qualifications were: (1) a Master's degree in Business Administration; (2) consistently high evaluations; and (3) sales management experience. *Id.* Based upon the two candidates' arguably disparate qualifications, the Court concluded that the plaintiff's "arguably superior qualifications for the . . . position, in and of itself, could lead a jury to doubt the justifications given for [defendant's] hiring decision. At minimum, [plaintiff] has created a genuine issue of material fact concerning the reasonableness of [defendant's] decision." *Id.* This case involves similar distinctions between the relevant candidates.

> USPS responds by asserting that:
>
> Peare's experience as the acting supervisor of customer services at the main office for 23 months prior to her selection sets her apart from Ms. Levine. During that 23-month period, Peare learned each component of the position, including the functions and duties of a supervisor in a delivery unit supervising carriers, the safety closer position, and the duties and responsibilities of the supervisor at the main office window in Grand Rapids.

Appellee's Br. at 17. In addition, USPS defends the hiring decision because of Mullins' determination that Peare gave a better interview.

The Court in *White* scrutinized the defendant's reliance on the selected candidate's purportedly superior interview, observing that "any evaluation of [plaintiff's] interview performance is an inherently subjective determination, and thus easily susceptible to

manipulation in order to mask the interviewer's true reasons for making the promotion decision." *White*, 533 F.3d at 394. "Indeed," the Court added, "since the very issue in dispute is whether the reasons given by these interviewers for their decision should be believed, it would be highly inappropriate for us to assume . . . that their own subjective perceptions of [plaintiff] were accurate."[6] *Id.*; *see also Hedrick v. W. Rsrv. Care Sys.*, 355 F.3d 444, 461 (6th Cir. 2004) (observing that "subjective reasons" for a hiring decision "provide 'ready mechanisms for discrimination'" (quoting *Grano v. Dep't of Dev. of City of Columbus*, 699 F.2d 836, 837 (6th Cir. 1983))).

In this case, USPS's reliance on Peare's purportedly superior interview warrants similar scrutiny. So too does USPS's contention that Peare had more relevant experience than Levine. In *White*, the Court concluded that the employer's claim that the selected candidate "possessed significantly more experience than [the plaintiff] appear[ed] overblown." *White*, 533 F.3d at 395. The Court observed that the selected candidate, "in all likelihood, was less familiar" than the plaintiff "with the specific challenges" of the job. *Id.* In this case, Levine testified that after Mullins selected Peare, she asked Levine to help train Peare. The fact that USPS needed Levine to train Peare for the position certainly raises questions about whether USPS's contention that Peare had more relevant experience is "overblown." *Id.*

USPS in its brief on appeal attempts to distinguish this case from *White*. Specifically, USPS highlights that in *White*, the plaintiff submitted evidence of "repeated instances of racially discriminatory comments members of the selection panel made toward the plaintiff and other minority employees." Appellee's Br. at 37; *see White*, 533 F.3d at 385. USPS's argument is unpersuasive. Although the plaintiff in *White* did submit evidence of discriminatory comments, the Court did not base its evaluation of the two candidates' relative qualifications on those

---

[6]The Court's observation in *White* is buttressed by the "vast literature suggesting that [many methods of interviewing frequently] have little validity." Jason Dana, Robyn Dawes, & Nathanial Peterson, *Belief In The Unstructured Interview: The Persistence of an Illusion*, 8 Judgment & Decision Making 512, 512 (2013).

comments. *White*, 533 F.3d at 394–95. USPS thus fails in its attempt to distinguish this case from *White*, which is the binding authority most analogous to this case.[7]

Meanwhile, the dissent incorrectly argues that *White* and *Bender* "offer conflicting rules." *Bender* and *White* both apply the *McDonnell Douglas/Burdine* burden-shifting framework, and they differ only insofar as the facts of the two cases differ. *Compare Bender*, 455 F.3d at 627 ("[I]n the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former") *with White*, 533 F.3d at 393 ("[T]he plaintiff may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision 'to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation.'" (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003))).

Indeed, *Bender* and *White* are part of a long series of Sixth Circuit cases applying the *McDonnell Douglas/Burdine* burden-shifting framework consistently and coherently to the unique facts of each case. *See, e.g.*, *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 589 (6th Cir. 2002) ("[T]he fact finder may infer discrimination from the circumstances."); *Wexler*, 317 F.3d at 576 ("This court has held that the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation."); *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) ("To carry her burden in opposing summary judgment, [a plaintiff] must produce sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired her.").

---

[7] USPS seeks to rely on *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806 (6th Cir. 2011). But in *Provenzano*, we affirmed because the employer presented evidence that it did not promote the plaintiff because of her on-the-job "performance issues." *Provenzano*, 663 F.3d at 816. No such issues exist in this case: USPS does not argue on appeal that Levine's on-the-job performance affected its decision not to promote her. Accordingly, this case is far more analogous to *White* than to *Provenzano*. Importantly, *Provenzano* does not purport to overrule *White*.

Equally important, even if it were the case that *White* and *Bender* focus their arguments somewhat differently, the Court in *White* articulates *verbatim* the same principle adopted in *Wexler*. In both *White* and *Wexler*, we favorably quoted from the D.C. Circuit's opinion in *Aka*:

> If a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate—something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture.

*Wexler*, 317 F.3d at 577 (quoting *Aka*, 156 F.3d at 1294). *Wexler* is a published case from 2003 and it predates *Bender*.[8]

Beyond her interview performance, USPS and Mullins have pointed to Peare's experience supervising carriers. But Levine disputes the relevance of that experience because when USPS posted the position, the main post office did not have carrier units, and therefore had no carriers to supervise. Accordingly, that experience was not a consideration relevant to filling the position. *See White*, 533 F.3d at 395 ("[Defendant's] claim that [the selected candidate] possessed significantly more experience than [plaintiff] appears overblown."). Therefore, viewing inferences in the light most favorable to the non-moving party, *Matsushita*, 475 U.S. at 487, Levine had more experience, and more *relevant* experience.

In sum, Levine submitted evidence demonstrating that she is better qualified than Peare based on her education, experience, and professional accomplishments. The dissent mischaracterizes the majority's opinion as categorically "privilege[ing] education over experience . . . ." The majority opinion does nothing of the sort. Instead, it "draw[s] all inferences in the light most favorable to the non-moving party," *Matsushita*, 475 U.S. at 487, and holds that Levine has put forward evidence that, in comparison with Peare, she has: (1) more relevant education; (2) more relevant experience; (3) superior professional accomplishments; and (4) superior performance as demonstrated in her evaluations. This is sufficient to create disputed material issues of fact as to the reasonableness of USPS's decision, and whether its proffered

---

[8]Moreover, the dissent misrepresents *White* by latching on to the word "arguably." The word "arguably" indicates the presence, or potential presence, of a genuine dispute of material fact. Making such a determination is, of course, the court's job at the summary judgment stage. *Bender*, 455 F.3d at 626–27.

reasons for promoting Peare was its actual motivation. *See White*, 533 F.3d at 393–94. Indeed, the dissent helps make this point for us. Where Levine noted her numerous professional achievements on her application, Peare, by comparison, highlighted her irrelevant or superfluous experience doing such things as chaperoning children's field trips.

In its misguided effort to demonstrate that Levine was not "plainly superior" or better qualified than Peare, the dissent invokes illustrative examples of situations where it would be inappropriate to privilege education over experience in selecting candidates for employment. However, the problem with the dissent's examples is that they are not at all analogous to the facts presented in this case. The dissent seems to suggest that comparing Levine's background with Peare's is like comparing an Ivy League law school graduate with no practical litigation experience with a local law school graduate who has actual litigation experience when the job requires litigation experience; or like comparing an academic with a PhD but with no construction work experience with a less formally educated person who is experienced at construction work when both are competing for a construction job. Such examples are completely irrelevant to the facts of this case where both Levine and Peare indisputably satisfy the minimal job requirements, and the issue is whether, considering their work experience, education, professional achievements, and other relevant attributes, Levine is "significantly better qualified for the job" than Peare. *White*, 533 F.3d at 393 (quoting *Aka*, 156 F.3d at 1294). In other words, the majority is not advocating qualifying or disqualifying a candidate based on valuing educational credentials over work experience to the exclusion of all else; rather, it would have the employer objectively assess the totality of relevant qualifications presented by both parties.

Accordingly, we hold that Levine met her "burden of producing enough evidence to convince a reasonable jury that [USPS's] proffered reasons for not promoting [her] may have been a mere pretext for racial discrimination, and thus, [USPS] is not entitled to summary judgment on [Levine's] failure to promote claim." *Id.* In other words, Levine has produced evidence of her relative qualifications that is "of sufficient significance . . . to call into question the honesty of [USPS's] explanation." *Bender*, 455 F.3d at 627.

The dissent contends that it merely wishes to have "[e]mployers—not courts—get to decide what makes a candidate the best person for a job." We do not dispute that employers "generally" have a right to select their own employees. *Id.* at 626. But what the dissent would actually have us do is subvert the will of Congress in enacting Title VII, which requires that an employer not "refuse[] to hire" a person "because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). In insisting that this Court take an employer at its word when it claims—even in the face of evidence to the contrary—that it chose not to hire a candidate because it has selected the superior applicant, the dissent attempts to rewrite binding precedent. By so doing, it would eliminate the third step of the Supreme Court's *McDonnell Douglas/Burdine* tripartite burden-shifting framework. *See, e.g.*, *McDonnell Douglas*, 411 U.S. at 802–06; *Burdine*, 450 U.S. at 252–56; *Bender*, 455 F.3d at 620; *White*, 533 F.3d at 391; *Provenzano*, 663 F.3d at 811–12; *Wexler*, 317 F.3d at 576–77; *Chen*, 580 F.3d at 400–01. We therefore apply the unique facts of this case to Title VII's plain text and binding precedent interpreting Title VII, including but not limited to *White* and *Bender*.

## III.  CONCLUSION

For the reasons stated above, the Court **REVERSES** the district court's judgment. The Court **REMANDS** the case for further proceedings consistent with this opinion.

————————————

**DISSENT**

————————————

THAPAR, Circuit Judge, dissenting. Ignoring decades of precedent, the majority opinion imposes a rule requiring employers to favor credentials over relevant work experience in hiring. In so doing, the majority misunderstands Title VII, summary-judgment burdens, and the role of our court. The result? Everyone loses: The new rule will hurt employers, undermining the longstanding principle that businesses are free to choose between qualified candidates. And it will also hurt employees, especially workers who never had the chance to get a college degree. I respectfully dissent.

Our court has long made clear that "employers are generally 'free to choose among qualified candidates.'" *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 626 (6th Cir. 2006) (quoting *Wrenn v. Gould*, 808 F.3d 493, 502 (6th Cir. 1987)). That means to survive summary judgment, Patricia Levine had to show she was the "plainly superior candidate, such that no reasonable employer would have chosen [Kathleen Peare] over [Levine]." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011) (quoting *Bartlett v. Gates*, 421 F. App'x 485, 490–91 (6th Cir. 2010)); *see also Bender*, 455 F.3d at 627. Absent such evidence, we cannot "call into question the honesty of the employer's explanation." *Bender*, 455 F.3d at 627. And here, no such evidence exists: even the majority admits that Levine was only "arguably"—not "plainly"—superior. *See* Maj. Op. at 10, 11.

The relevant facts of this case are undisputed. Everyone agrees that USPS's posted job requirements for Supervisor of Customer Services were relatively minimal and generic. In fact, all career postal employees within the district were eligible to apply. Instead of requiring any formal education, USPS asked applicants to either provide their relevant prior work experience or take an exam to show they otherwise possessed the sufficient "job-related knowledge, skills, and abilities" for the role. R. 18-3, Pg. ID 83, 85. The other requirements focused on practical abilities, such as communication, organization, knowledge of internal systems, and personal acumen. *Id.*

Everyone also agrees that when Peare and Levine applied for the promotion in 2015, both women not only met the minimal posted qualifications, but exceeded them. Both were career postal employees. And both had experience serving as acting supervisors. But the candidates differed in three respects.

First, Peare's tenure as acting supervisor was lengthier and more recent. She'd been performing the very job she was applying for—Supervisor of Customer Services—for 23 months without complaint. She'd also served in that role between September 2012 and February 2013. Levine, by contrast, had served one seven-month detail in 2013 before stepping down voluntarily.

Second, the candidates' educational backgrounds differed: Peare had only a high school diploma, while Levine had an associate's degree, a bachelor's degree, and a master's degree in business.

Third, on the section of the application form requesting the applicant identify "Special Skills/Associations," the candidates volunteered different kinds of information. Peare highlighted that she was "involved with all [her] children's field trips," "[c]haperoned for the school," "[w]orked with the military wives program," and "[w]as in the Army for 4 years." R. 79-5, Pg. ID 526. Levine, by contrast, listed seven awards and honors she had received during her postal career, the earliest being a 1991 Certificate of Appreciation from the Greater Michigan District, and the most recent being a 2007 "Spot Award, Business Service Network, Headquarter." R. 79-4, Pg. ID 519.

Everyone finally agrees that USPS gave two legitimate, nondiscriminatory reasons for promoting Peare instead of Levine. *See* Maj. Op. at 9. First, USPS pointed to the fact that Peare had "more relevant supervisory experience than Ms. Levine." Appellee Br. at 6. Most notably, she had been successfully serving in the very role to which she was promoted for nearly two years before her promotion. During that time, she "learned each component of the position." Appellee Br. at 17. Second, in her interview, Peare was able to demonstrate her superior knowledge of the position and highlight recent successes managing employees, since she was serving in the role at the time. Based on those two factors, USPS concluded that Peare's

"lengthy and more recent tenure" in the acting supervisor position made her more qualified for the promotion than Levine. Appellee Br. at 11.

Based on all of that, you might think this is an easy case: Both Peare and Levine were qualified for the promotion. At best, Levine was only "arguably" superior. *See* Maj. Op. at 11, 12. "[A] reasonable decisionmaker could make a plausible case for selecting" either one. *Bender*, 455 F.3d at 628. And USPS gave good reasons for selecting Peare, so USPS is entitled to its choice. Yet the majority ignores USPS's business judgment, concluding Levine presented evidence sufficient to survive summary judgment. That's wrong for three reasons.

First, the majority opinion is irreconcilable with our caselaw. As we've long emphasized, "'what matters' is the employer's perception of the applicant's qualifications." *Id.* at 627 (quoting *Browning v. Dep't of the Army*, 436 F.3d 692, 698 (6th Cir. 2006)). Employers—not courts—get to decide what makes a candidate the best person for a job. Here, that means USPS is entitled to give more weight to experience than education or awards.

The majority disregards that longstanding rule, concluding Levine was "better qualified" in large part because of her credentials. It's true Levine had "far more education" than Peare. Maj. Op. at 12. It's also beside the point. The job didn't require any higher education at all, let alone a master's degree. And the selecting official testified that she didn't even consider the candidates' educational backgrounds. Instead, she explained that USPS "values the most qualified person being selected for the job," and that "[j]ust because someone has an education doesn't make them more qualified than someone who doesn't." R. 77-1, Pg. ID 433. Title VII doesn't require USPS to consider education when USPS regards other qualifications as more important.

Requiring businesses to privilege credentials over experience harms employers and employees alike. Some examples illustrate the problem. Imagine a public defender's office choosing between two candidates: The first is a graduate of a local law school who achieved middling grades but excelled in mock trial and obtained two years' criminal-defense experience after graduation. The second is a Yale Law School graduate and former Supreme Court clerk who has never appeared in court. Would we call the Yale graduate "plainly superior" just

because her credentials are more prestigious?  Must the public defender's office choose the Yale graduate or be subject to a Title VII suit?  Similarly, imagine a construction company hiring workers for a job.  One applicant is a 19-year-old with a GED and 3 years' experience working construction.  The other is a 40-year-old sociology PhD with an academic interest in the social dynamics on construction sites.  Must the construction company hire the academic?

As these illustrations make clear, it is often nonsensical to value credentials over relevant experience.  A rule *requiring* businesses to do so is bad for everyone involved.  Such a rule undermines employers' lawful preferences.  And it harms employees who have proved themselves capable through years of hard work but, for whatever reason, never had the chance to pursue higher education.

Second, Levine hasn't raised a triable issue of material fact.  Once USPS presented legitimate, nondiscriminatory reasons for choosing Peare, the burden shifted to Levine "to present sufficient evidence that the proffered rationale[s were] pretext for illegal discrimination." *Bender*, 455 F.3d at 624.  Because Levine presented no "probative evidence of discrimination" other than qualifications evidence, she had to show she was "so significantly better than [Peare] that *no reasonable employer* would have chosen [Peare] over [Levine]." *Id.* at 627 (emphasis added).  But Levine has produced evidence showing only that she and Peare were both qualified—and that Levine had other credentials that USPS did not consider in making its selection.  Evidence that Levine "was as qualified or marginally more qualified than [Peare] is insufficient, in and of itself, to raise a genuine issue of fact that [USPS's] proffered legitimate, non-discriminatory rationale[s were] pretextual." *Id.*  The best the majority can do is characterize Levine as "arguably superior." Maj. Op. at 11.  That's not enough under *Bender*, which even the parties agree governs this case. *See, e.g.*, Appellant Br. at 15–16; Appellee Br. at 21; Oral Arg. at 0:39–0:47 (Levine's Attorney: "We think the district court in this case erred when it granted summary judgment because it did not properly apply the *Bender* standard.").

So how does the majority escape this outcome?  It relies instead on *White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008). *See* Maj. Op. at 12–15.  But *White* and *Bender* offer conflicting rules.  The *White* court held that the plaintiff presented a triable fact issue on pretext by showing he had "arguably superior qualifications." 533 F.3d at 394.  In *Bender*,

however, we held that to survive summary judgment, a plaintiff must show she is "so significantly better" that "*no reasonable employer*" would reject her. *Bender*, 455 F.3d at 627 (emphasis added). In other words, "arguable" doesn't cut it. *See id.* at 628 ("If two reasonable decisionmakers could consider the candidates' qualification and arrive at opposite conclusions as to who is more qualified, then clearly one candidate's qualifications are not significantly better than the others."). And because *Bender* was decided before *White*, *Bender* controls. *Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).

Third, the majority misunderstands the limited role of our court. Employers are entitled to make "decisions that others may disagree with." *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996). By substituting its own preference for USPS's reasonable and lawful choice, the majority forgets that our authority is limited to preventing discriminatory employment practices rather than implementing ideal ones. *See Bender*, 455 F.3d at 627. In other words, the majority assumes "the illegitimate role of acting as a super personnel department, overseeing and second-guessing employers' business decisions." *Id.* (cleaned up).

USPS is entitled to make its own hiring decision, even if members of this court would have made a different one. I respectfully dissent.