NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0167n.06

No. 25-3722

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>TRANIECE MORGAN,</td><td>)</td><td rowspan="11"><strong>FILED</strong><br>Apr 14, 2026<br>KELLY L. STEPHENS, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO<br><br>OPINION</td></tr>
</table>

TRANIECE MORGAN,

    Plaintiff-Appellant,

v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION,

    Defendant-Appellee.

**FILED**

Apr 14, 2026

KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

OPINION

Before: BOGGS, BATCHELDER, and MOORE, Circuit Judges.

**BOGGS, Circuit Judge**. Traniece Morgan brought a disability-discrimination claim under the Rehabilitation Act, 29 U. S.C. § 701 *et seq*., against her employer of thirty-plus years, the Ohio Department of Rehabilitation and Correction ("ODRC"), for failure to accommodate her history of transient ischemic attacks ("TIAs") and failure to engage in an interactive process to determine how to accommodate Morgan for the disability. The district court held that ODRC was entitled to summary judgment because Morgan had failed to request an accommodation for her disability and that Morgan herself had abandoned the interactive process. Although the record indicates that Morgan felt hostility and lack of respect from ODRC, the only claim before us is her disability-discrimination claim and the district court properly held that Morgan failed to establish that she had been discriminated against on the basis of her disability.

## I.        Background

Morgan has worked for ODRC since 1994 and is currently a financial associate at the Franklin Medical Center ("FMC"), which houses prisoners needing intensive medical and nursing care. Morgan has a history of Transient Ischemic Attacks ("TIAs"). ODRC has had actual knowledge of her condition at least since in 2014, when she applied for intermittent leave under the Family and Medical Leave Act ("FMLA"). In that application, her doctor certified her condition and noted that when Morgan had a TIA, she would need to be hospitalized. Like all ODRC employees, Morgan had to renew her FMLA certification annually and Morgan's request for accommodation was always the same: hospitalization in the event she suffered a TIA. She never requested any other accommodation. From 2014 to 2023 Morgan worked without significant disability-related issues, taking intermittent FMLA leave only when she suffered a TIA.

But in 2023, her direct supervisor, Christina Robinson, stated that Morgan had become "increasingly disruptive" and "unprofessional" and was "aggressive" and "hostile" when communicating with co-workers or her supervisor. That June, ODRC placed Morgan on paid administrative leave for her "unprofessional" and "aggressive" conduct and would not allow her to return to work until she had an independent medical exam ("IME") with a psychologist to determine if she could perform her essential job functions.

Dr. Michael Murphy, who was selected by ODRC, completed Morgan's IME and concluded that Morgan was not able to perform the full duties of her job. He concluded that Morgan was impaired to the degree that she would "require modified work activity in order to return to any occupation, including her former job" and that "resumption of her full duties [was] not advised." As the diagnosis of her condition, Dr. Murphy stated that the "clinical data points to a mild neurocognitive disorder, but this requires further data for confirmation."

On September 18, 2023, Robinson and FMC Warden Malcom Heard, met with Morgan and her union representative to discuss the IME and Dr. Murphy's recommendations. ODRC informed Morgan that she could request disability leave, FMLA leave, an accommodation under the Americans with Disabilities Act ("ADA"), or she could dispute Dr. Murphy's recommendation with an opinion from her own doctor stating that she could "return to work." Morgan, who believed she was not disabled and could continue to perform the duties of her job, informed ODRC that she intended to dispute the IME's conclusion that she could not return to full-duty work.

On September 20, Morgan obtained a note stating that she could return to full duty immediately with no restrictions. The note was from Anthony Williams, an Advanced Practice Registered Nurse/Certified Nurse Practitioner who had completed Morgan's 2023 health-provider FMLA certification. On September 21, ODRC informed Morgan that the note was insufficient and that her paid leave would cease, unless she submitted a medical opinion that indicated that the doctor had reviewed the IME and agreed or disagreed with the IME's recommendations. Morgan's last day of paid administrative leave was September 25, 2023. Morgan then began using her personal leave-time.

On October 31, Morgan saw Dr. Alicia Monahan, who wrote an opinion letter stating that she had reviewed the IME and that Morgan "currently does not have any conditions that render her medically disabled" and that Morgan could return to work on November 6, 2013. ODRC accepted the note and returned Morgan to full duty without restrictions on that date.

On November 28, Morgan filed suit against ODRC. Her operative complaint contains a single count alleging disability discrimination under the Rehabilitation Act for failure to make a reasonable accommodation and for failure to engage in the required interactive process for identifying an appropriate accommodation. Morgan does not claim any loss of pay, but she seeks

economic damages for the use and loss of her personal leave-time from September 28 to November 6, 2023. The district court granted ODRC's motion for summary judgment and Morgan timely filed this appeal.

## II. Standard of Review

We review de novo the district court's order granting summary judgment. See, e.g., *Levine v. DeJoy*, 64 F.4th 789, 796 (6th Cir. 2023). "Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, we ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## III. Discussion

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits a recipient of federal funding from discriminating against a qualified employee because of the employee's disability. To be considered disabled under the Rehabilitation Act, an individual must (1) have a physical or mental impairment that substantially limits him or her in at least one major life activity, (2) have a record of such an impairment, or (3) be regarded as having such an impairment. *Mahon v. Crowell,* 295 F.3d 585, 589 (6th Cir. 2002). The Rehabilitation Act applies the disability standards of the Americans with Disabilities Act (ADA), *see* 29 U.S.C. § 794(d), and cases construing one statute are instructive in construing the other. *McPherson v. Michigan High School Athletic Association*, 119 F.3d 453, 459-60 (6th Cir. 1997).

Employees may bring claims under the Rehabilitation Act both for failure to accommodate a disability and for failure to engage in an interactive process to identify an appropriate

accommodation. *See Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 669 (6th Cir. 2020). Also, an employee can sue if her employer regards her as disabled, even if she is not, *see* 42 U.S.C. § 12102(1)(C), (3). *Patterson v. Kent State Univ.*, 155 F.4th 635, 651 (6th Cir. 2025); *see also Gecewicz v. Henry Ford Macomb Hosp. Corp.,* 683 F.3d 316, 321 (6th Cir. 2012).

For a prima facie case under Section 504 for failure to accommodate, the plaintiff must show that: (1) she has a disability; (2) she is qualified for the position; (3) the agency was aware of her disability; (4) she needed an accommodation; and (5) the agency failed to provide the necessary accommodation. *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004).

In granting summary judgment, the district court held that Morgan (1) failed to request an accommodation and (2) abandoned the interactive process. The court assumed, as do we, that Morgan's TIAs qualified as a disability, or an impairment that substantially limits one or more major life activities. But the court noted that her failure-to-accommodate claim was not a prototypical case where an employee asserts a disability, asks for accommodation which the employer refuses to give, and then sues for failure to accommodate. Instead, the court held that Morgan's claim was more like a "regarded as" disability claim in that she claimed that ODRC failed to provide accommodations that she actually did not need but which ODRC believed she needed. The court held that in "regarded as" cases, an employee is not entitled to a reasonable accommodation.

The court held even if Morgan's claims were based on actual disability, it was undisputed that Morgan did not request an accommodation (other than leave for going to a hospital after a TIA event) and that Morgan said she did not need an accommodation to perform her job duties. In fact, Morgan provided a doctor's note stating that she was physically able to perform her duties

and did not need an accommodation. *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1997).

Finally, the district court concluded that Morgan's case was distinguishable from the cases she relied on (and on appeal continues to rely on) where employees did not dispute their need for accommodations. *See Root v. Decorative Paint, Inc.*, No. 23-3404, 2024 U.S. App. LEXIS 25207 (6th Cir. Oct. 4, 2024); *Cannon v. Jacobs Field Services North America*, 813 F.3d 586 (5th Cir. 2016).

For the following reasons, we agree with the district court.

The record shows that, before filing suit, Morgan always maintained that she was not disabled. Morgan was upset *because* ODRC *regarded* her as disabled. Morgan never claimed she was disabled and never asked for an accommodation. She was unwavering in her belief that she could perform her job, that she did not have a disability, and that she did not need an accommodation. But in this litigation, Morgan now argues that ODRC discriminated against her because of her "actual" disability by failing to follow Dr. Murphy's recommendation in the IME for further neurological testing to determine the extent of Morgan's disability and appropriate accommodation. In other words, Morgan argues that ODRC failed to conduct an individualized assessment of her actual medical condition and of the impact that condition would have on her specific job requirements. (Appellant Brief at 10).

Whether Morgan's claim is considered an "actual" disability claim or a "regarded as" disability claim is not determinative. Under either type of disability claim, ODRC prevails as a matter of law.

If Morgan had an actual disability, she never sought an accommodation for her disability. ODRC gave Morgan the option of seeking accommodation through the ADA, but Morgan chose

to challenge the IME's finding regarding her deficient cognitive abilities. In claiming that she did not have a disability and challenging the IME, Morgan opted out of the interactive process and individualized assessment involved in determining a reasonable accommodation for a disability. Morgan submitted a doctor's opinion stating that she was able to perform the duties of the job and could return to work without an accommodation. Morgan never claimed she was disabled, disputed the results of the IME, and never requested an accommodation for a disability she believed she did not have.

If Morgan's claim is that ODRC "regarded" her as having a disability that she did not have, her failure-to-accommodate claim is likewise barred. This circuit has held that the fact that an employee does not have a disability obviates an employer's obligation to provide an accommodation. *Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999); s*ee* 29 C.F.R. § 1630.2(o)(4). Applying this precedent, if Morgan's claim is that ODRC wrongly perceived or had a mistaken belief that she had a disability and treated her adversely, ODRC could not at the same time have an obligation to accommodate a disability that she did not have.

**IV**

Accordingly, we **AFFIRM** the district court's judgment.