NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0097n.06

Case No. 24-3586

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Feb 26, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| DREYON WYNN, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| UNIVERSITY OF TOLEDO, | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

O P I N I O N

Before: BOGGS, LARSEN, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Dreyon Wynn worked at the University of Toledo as its Director of Labor Relations and Human Resources Compliance for less than a year when he was terminated in January 2021. After Wynn failed to return his university-issued laptop as requested, his boss reported the matter to law enforcement. University police subsequently arrested Wynn while he was returning the laptop. Wynn sued the University, alleging racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., ("Title VII"). He claimed that the University failed to promote him and ultimately discharged him based on his race and that it also terminated him and caused his arrest in retaliation for protected activity. The district court granted University of Toledo's motion for summary judgment as to all claims. Wynn asks us to reverse the district court's ruling and remand the case for a jury trial. For the reasons outlined below, we AFFIRM.

**I.**

*Wynn's Position as Director of Labor/Employee Relations and HR Compliance.* The University of Toledo ("UT") hired Wynn in March 2020 to be the Director of Labor/Employee Relations and Human Resources ("HR") Compliance. Wynn's duties included assisting with labor relations, ensuring compliance with labor laws and collective bargaining, handling employee grievances, and monitoring Equal Employment Opportunity ("EEO") investigations and compliance. Wynn reported directly to the Associate Vice President and Chief HR Officer. Wendy Davis held this position until she was terminated in September 2020. After Davis's departure, Wynn reported to her replacement, John Elliott.

*UT Terminates Wynn.* The Executive Director of Labor/Employee Relations and Compliance, Bethany Ziviski, was hired for her position instead of Wynn, and was tasked with assessing employees in the HR department—including Wynn. In her evaluation of Wynn, Ziviski identified several performance issues, including poor organization, communication, follow-up, and follow-through. Ziviski noted that Wynn inaccurately tracked outstanding grievances; failed to produce accurate work product; executed an agreement that violated labor laws; allowed an employee to continue using UT insurance benefits despite having exhausted paid and unpaid leave; inaccurately reported the number of union members; called in sick but did not report it using proper channels; and negotiated employee pay raises without obtaining the proper approvals from UT. Ziviski also stated that she and others encountered difficulties in obtaining information from Wynn on time, and that Wynn often failed to respond promptly.

Eventually, Ziviski recommended to Elliott that Wynn be terminated. Elliott, who had reached the same conclusion about Wynn's performance, agreed to Wynn's termination. According to Elliott, no one had anything good to say about Wynn's work, and several internal UT

customers had expressed concerns about Wynn's competence and reliability in handling union and labor matters.

On January 26, 2021, Ziviski notified Wynn that UT would be terminating his employment. Though he would be paid during the 90-day termination period, he was to cease working immediately. During the 90-day termination-notice period, Ziviski provided performance reasons for Wynn's termination.

*UT Police Arrest Wynn.* On February 1, 2021, UT requested that Wynn return the University's laptop. Wynn responded that he did not need to return the laptop until the 90-day termination period concluded because he was still an employee of UT. Elliott replied on February 3, 2021, directing Wynn to return any University property in his possession, including the laptop, by February 5, 2021. On February 4, 2021, Wynn indicated that he would not be "making a special trip to come to Toledo" to return the laptop until April 26, his official last day as an employee. (Wynn Dep. I, R. 31, PageID 655).

Ziviski reported the matter to UT Police on April 9, 2021. Detective Zakrzewski was assigned to the matter. On April 12, 2021, Zakrzewski spoke with Wynn, who confirmed that he had the laptop and would return it on April 26, his last paid working day. Zakrzewski requested that Wynn return the laptop before April 26, which Wynn agreed to do. However, Wynn never contacted Zakrzewski again prior to his arrest.

Zakrzewski tried to contact Wynn on four subsequent occasions, each time leaving a voicemail: April 15, April 19, April 22, and April 26. Wynn did not return any of Zakrzewski's calls. On April 27, 2021, one day after Wynn's employment concluded, Ziviski informed the police that Wynn had not returned the laptop. When Zakrzewski had not heard from Wynn by May 3,

2021, he obtained an arrest warrant for theft of government property—a felony based on the laptop's value.

On May 19, 2021, Wynn left a voicemail for Zakrzewski, stating that he could return the laptop that day or on May 21. But Wynn still did not return the laptop until May 27. When he arrived at the police station with the laptop, Zakrzewski advised him of the warrant for his arrest. Wynn was subsequently arrested and taken to Lucas County Jail. He underwent processing and spent several hours in jail before being released. The charges against him were dismissed in July 2021.

*Ohio Civil Rights Commission Charge.* In January 2021, Wynn filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC"), alleging race discrimination and retaliation. After his arrest, he filed another OCRC charge of discrimination. The OCRC found that it was probable that UT engaged in unlawful discriminatory practices and proposed a Conciliation Agreement and Consent Order. The parties never executed the Agreement, and Wynn later requested withdrawal of his charge of discrimination before receiving a right-to-sue letter from OCRC.

*Procedural History.* Wynn sued UT under Title VII for racial discrimination and retaliation. Following discovery, UT moved for summary judgment on all claims. The district court granted the motion, after concluding that Wynn could not establish that UT's proffered reason for discharging him was a pretext for discrimination or retaliation. Wynn timely appealed.

**II.**

We review a district court's summary judgment ruling de novo. *Bashaw v. Majestic Care of Whitehall, LLC*, 130 F.4th 542, 548 (6th Cir. 2025). Summary judgment is appropriate when there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant bears the burden of establishing the absence of any genuine dispute of material fact.  *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  When evaluating whether a genuine dispute exists, we construe the facts in the light most favorable to the non-moving party.  *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020).

## III.

Wynn primarily argues on appeal that the district court erred in concluding that his arrest was not retaliatory and that he failed to establish pretext.  He makes little effort to develop any separate argument concerning his discrimination claims.  Therefore, we address those claims only to the extent that his arguments concerning pretext might arguably extend to them.  We note at the outset, however, an error in the analytical framework that he propounds concerning retaliation.  Specifically, as we discuss more fully below, Wynn erroneously suggests that his Title VII retaliation claim stemming from his arrest is subject to the same analysis applied to claims for First Amendment retaliation.  It is not.

### A.  Retaliation—Arrest

Title VII prohibits employers from taking retaliatory measures against employees who "opposed any practice made . . . unlawful . . . by this [title]" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 343 (6th Cir. 2021) (quoting 42 U.S.C. § 2000e-3(a)).  A plaintiff can establish a prima facie case of retaliation through either direct or circumstantial evidence.  *Id.* at 344.  Direct evidence is evidence that "if believed, requires no

inferences to conclude that unlawful retaliation was a motivating factor in the employer's action." *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 648 (6th Cir. 2015) (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008)). Conversely, circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that [retaliation] occurred." *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649 (6th Cir. 2012).

The circumstantial-evidence route, which Wynn employs here, requires us to analyze the evidence using the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff carries the initial burden of establishing a prima facie case of retaliation. *Id*. at 802. To do so, a plaintiff must show that "(1) [he] engaged in protected activity, (2) the defendant was aware of the protected activity, (3) the defendant took an action that was materially adverse to the plaintiff, and (4) there is a causal connection between the plaintiff's protected activity and the defendant's adverse action." *Jackson*, 999 F.3d at 343–44 (citation modified). If the plaintiff satisfies these elements, the burden shifts to the employer to offer a "legitimate, nondiscriminatory reason for its action." *Id.* at 344 (citation modified). This requirement is "merely a burden of production, not of persuasion, and it does not involve a credibility assessment." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). Once the employer offers a legitimate, non-retaliatory reason for its conduct, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason was pretextual and, at its core, "not the true reason" for its action. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014).

Wynn argues that UT sought his arrest in retaliation for his engaging in protected activity under Title VII. He further argues that the district court erred in finding he failed to show pretext.

At summary judgment, a plaintiff can prove pretext by "produc[ing] evidence from which a jury could reasonably doubt the employer's explanation." *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 508 (6th Cir. 2014) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)).

### 1. Prima Facie Case

The parties agree that Wynn engaged in protected activity when he filed his claim of discrimination with the OCRC and the EEOC and that UT was aware of the filing. But UT contests the third and fourth parts of the test—adverse employment action and causation. In the end, however, we need not resolve this aspect of the parties' dispute because Wynn's claim falters at the pretext stage regardless.

### 2. Legitimate, Non-Discriminatory Reason

UT has offered a legitimate, non-discriminatory explanation for its request for an arrest warrant: Wynn failed to return his work-issued laptop after his employment ended, prompting campus police to obtain a felony arrest warrant. UT maintains that Wynn's arrest was a direct consequence of his failure to return its laptop within the stipulated timeframe, not in retaliation.

Ohio Revised Code § 2913.02(A)(1)–(2) prohibits anyone "with purpose to deprive the owner of property" from "knowingly . . . exert[ing] control over . . . the property" either without consent or beyond the scope of the owner's consent. Here, within a week of Wynn's termination, Elliott requested that he return the laptop. Wynn declined, stating he would return the laptop upon his official separation date of April 26. In the ensuing three months, Elliott, Ziviski, and UT police each tried to secure the laptop's return, to no avail. And despite Wynn's representation that he would return the computer on his last day of employment, Wynn still had not returned the laptop a week beyond that date.

These facts gave UT reason to believe Wynn had committed theft by "depriv[ing]" the University of its property, and knowingly controlling the laptop "[b]eyond the scope of consent." Ohio Rev. Code Ann. §§ 2913.02(A)(1)–(2), 2921.41, 2913.01(K). And according to Jeffrey Newton, UT's Police Chief, once the felony warrant was issued, UT police "had to execute the arrest." (Newton Dep., R. 30, PageID 544). So UT has met its burden to provide a legitimate, non-retaliatory reason for the arrest. Wynn must therefore show that the reason was a pretext for retaliating against him for engaging in protected activity.

3. *Pretext*

Plaintiffs typically attempt to establish pretext in one of three ways: (1) showing that the employer's proffered reasons had no basis in fact, (2) demonstrating that the proffered reasons did not actually motivate the employer's action, or (3) showing that the reasons were insufficient to motivate the employer's actions. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011). Plaintiffs may pursue other means to establish pretext, but in doing so they must provide a "cognizable explanation." *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020). After all, "the ultimate burden of proof to show [retaliation] remains on the plaintiff at all times." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

In attempting to show pretext, Wynn makes several arguments—not all of which appear to relate to his arrest. First, he asserts that UT fired only Black managers in HR, replaced him with a white woman, and demoted rather than fired Theresa Kovacs, a white employee. But Wynn does not provide any evidence to support these allegations. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) (explaining that conclusory statements without supporting evidence are insufficient to overcome summary judgment). And he does not explain how UT's alleged firing of Black managers or replacing him with a white woman has any tie to his arrest, which came well

after his termination. Though he does not state as much, it could be that he meant to advance these reasons to show pretext in relation to his alleged discriminatory termination rather than his arrest. No matter. The lack of evidentiary support for the facts he alleges dooms his argument altogether.

Second, Wynn points out that he voluntarily returned the laptop, so any probable cause for theft "dispersed" when he turned in the computer. (Appellant's Br., ECF 22, 22). Although his argument is not a model of clarity, he appears to contend that even if there was probable cause for his arrest, the Supreme Court's decision in *Gonzalez v. Trevino*, 602 U.S. 653 (2024) (per curiam) supports his argument that UT's conduct was retaliatory. In other words, *Gonzalez* permits him to overcome UT's legitimate, non-retaliatory explanation for his arrest. This novel argument is a nonstarter. *Gonzalez* is a 42 U.S.C. § 1983 case, not a Title VII case. Section 1983 is the vehicle through which a plaintiff may seek vindication for certain constitutional and federal law violations committed by government officials. 42 U.S.C. § 1983; *see Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012). And it is well settled that "the framework for analyzing a Title VII retaliation claim is distinct from the framework for analyzing a First Amendment retaliation claim." *Laster*, 746 F.3d at 732.

For his part, Wynn offers no explanation as to why this § 1983 caselaw should be extended to the Title VII context. Nor does he cite any cases in which it has been so applied. The fact that the adverse action he claims in this employment discrimination case is an arrest does not transform the case into one involving a constitutional tort. Indeed, Wynn was free to sue his "public employer under both Title VII and § 1983," assuming the alleged § 1983 violation infringed on his constitutional rights. *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1205 (6th Cir. 1984). But he did not do so here and explicitly conceded at oral argument that it was not his intention to do so. So his appeal on this ground fails.

**B. Retaliation—Termination**

Wynn does little to advance his argument from below that his termination was retaliatory. He states only that "the University was aware of [his] activity . . . and fired him anyway." (Appellant's Br., ECF 22, 16). Although he more specifically alleges that he was fired for advocating on behalf of UT employees who alleged discrimination, the district court rejected these additional grounds for retaliation since Wynn did not allege them in his amended complaint. (Op. & Ord., R. 39, PageID 1648). That he somewhat vaguely reprises this argument before us is of no moment because UT had ample grounds to terminate Wynn and supported its explanation for his termination with evidence from the record. And so we affirm the district court's grant of summary judgment on his retaliatory termination claim.

**C. Employment Discrimination**

Wynn also claims that the University discriminated against him based on race, both in declining to promote him to the Executive Director position and in subsequently terminating his employment. Wynn did not meaningfully develop arguments for either claim in his opening brief, which would ordinarily result in forfeiture. *See Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022). UT, perhaps in an abundance of caution, nonetheless addressed the claims in its briefing. And Wynn replied. But even in replying, Wynn's arguments are largely conclusory and at times indistinguishable from his retaliation argument. Still, UT fully briefed the issues, so we have no concern that it will be surprised by our consideration of these issues. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552–54 (6th Cir. 2008) (discussing the prevention of surprise to litigants as a concern). Therefore, in the interest of completeness, we briefly address both claims.

Title VII prohibits employers from taking adverse employment actions against their employees based on race. *Ricci v. DeStefano*, 557 U.S. 557, 579 (2009) (citing 42 U.S.C. § 2000e-

2(a)(1)). Discrimination claims based on circumstantial evidence, as here, are analyzed under the *McDonnell Douglas* burden-shifting framework. *Chen*, 580 F.3d at 400. Therefore, Wynn must first make out a prima facie case. *Id.* The burden then shifts to UT to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* And if UT meets that burden, then Wynn must show that the proffered reason was a mere pretext for discrimination. *Id.*

### 1. *Failure to Promote*

On appeal, UT concedes that Wynn can establish a prima facie case of discrimination based on its decision not to promote him. Nonetheless, UT asserts that Wynn cannot prove that its legitimate, nondiscriminatory reasons for not promoting him were pretextual. Hiring a candidate who performed better than the plaintiff during the interview process and who was considered a better candidate overall for the position is a legitimate, nondiscriminatory explanation for refusing to promote a plaintiff. *See Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 616 (6th Cir. 2003).

UT maintains that it chose Ziviski because she was the strongest candidate. She received three out of four committee votes, held a law degree (a "strongly preferred" qualification), and was viewed as having the broadest experience in human resources. (Position Description, R. 32-4, PageID 1061). By contrast, none of the members of the hiring committee voted to consider Wynn for the position and thought he needed "more experience before promotion." (Wynn Candidate Feedback, R.32-7, PageID 1075). UT's explanation for its decision not to promote Wynn is facially legitimate and nondiscriminatory.

Wynn's argument for pretext conflates his discrimination and retaliation theories and does not directly address UT's stated rationale for choosing Ziviski. He fails to point to evidence showing that UT's stated reason had no basis in fact, did not actually motivate the decision, or was

insufficient to justify the decision. *See Provenzano*, 663 F.3d at 815. For instance, as the district court observed, Wynn offers no evidence that he was "significantly better qualified" than Ziviski. *Levine v. DeJoy*, 64 F.4th 789, 799 (6th Cir. 2023) (citation omitted). Nor does his appeal offer any other basis on which we might conclude that UT's decision not to promote him was based on race. Under these circumstances, we see no reason to disturb the district court's well-considered reasons for rejecting Wynn's claims of pretext.

### 2. Termination

Finally, we address the district court's summary judgment ruling on Wynn's discriminatory discharge claim. But like his failure-to-promote claim, Wynn's argument leaves much to be desired. His references to the termination are sparse, embedded within broad allegations of race-based mistreatment, and generally underdeveloped argumentation. That is not enough.

For its part, UT concedes that Wynn met his prima facie showing. Even accepting this concession, however, UT has articulated a legitimate, nondiscriminatory reason for Wynn's termination: poor performance. An employer's termination of an employee for "poor performance is a legitimate non-discriminatory reason" for termination. *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 488 (6th Cir. 2011). Poor performance typically includes, but is not limited to, struggling with work procedures, having problems fitting in socially, or being combative with coworkers. *See Chen*, 580 F.3d at 397. Here, UT cites negative feedback from internal stakeholders, problems with communication and documentation, and issues with judgment and responsiveness.

Again, Wynn must identify evidence showing that UT's reasons were pretextual. *See Miles*, 946 F.3d at 888 (requiring a "cognizable explanation" of how the evidence shows pretext). He does not. Instead, he mainly offers general or unsupported statements—asserting, for instance,

that "[v]irtually everything the University did was race-based." (Appellant's Br., ECF 22, 21). Such conclusory statements are insufficient. *Alexander*, 576 F.3d at 560. True, Wynn points out that he, and fellow African Americans Wendy Davis and Carolyn Chapman were all fired from the HR department around the same time. But he points us to no case in which such evidence has sufficed, by itself, to do more than establish a prima facie case. Wynn also attempts to identify a comparator in Kovacs, asserting that Kovacs, a white woman, "was demoted, rather than fired." (Appellant's Br., ECF 22, 21). But he offers virtually no other information about Kovacs's circumstances. We know only that Wynn claims Kovacs was a Director of HR Academic who was demoted to the role of Sr. Labor Relations Specialist.[1] (*Id.* at 11–12). Wynn does not explain, for instance, whether Kovacs's conduct was similar to his own. Nor does he provide the stated reason for her demotion. As such, he may not rely on her demotion to show pretext. *Miles*, 946 F.3d at 893 (explaining that proposed comparators for purposes of showing pretext must have engaged in "substantially identical conduct." (citation omitted)). Therefore, even if Wynn presented a prima facie case, he has not met his burden to show pretext, and summary judgment on his termination-based discrimination claim was appropriate.

## IV.

For the reasons set forth above, we **AFFIRM**.

---

[1] An exhibit to Wynn's deposition lists Kovacs as a "Senior HR Consultant."